Andrzejewski v. Northwestern Fuel Co. 158 Wis. 170.

ANDRZEJEWSKI, Administratrix, Respondent, vs. NORTH-
WESTERN FUEL COMPANY, Appellant.

*May 21—October 6, 1914.*

*Evidence: Competency: Res gestæ: Master and servant: Injury caus-
ing death: Unsafe appliance: Proximate cause: Contributory
negligence: Presumptions: Recovery for death of child: Illegiti-
mates: Instructions to jury: Harmless error: Pecuniary loss
from death of adult child: Measure of damages: Appeal: Ques-
tions considered.*

1. Minor matters which constitute the *res gestæ* of a major subject
   are things so closely connected therewith as to be substantially
   involved therein and to explain or illustrate it; hence there
   must be a material major circumstance in order that there be
   evidentiary *res gestæ*, and the latter are not, primarily, com-
   petent to prove the former.
2. There being sufficient circumstantial evidence, coupled with be-
   lievable expert evidence, to warrant the inference that the
   death of plaintiff's intestate was caused by an injury to his
   head inflicted by external violence at the time claimed, such
   injury constituted a major subject within the rule above stated.
3. Deceased having been seen at his work apparently in a normal
   condition, and a few minutes later having been seen leaving his
   work and holding his hand to his head, his exclamation then
   uttered that he had been hurt by the levers of the machine
   which he was operating was properly admissible as part of the
   *res gestæ.*
4. The decision of the trial court as to whether a particular cir-
   cumstance is within the field of *res gestæ* is not assailable on
   appeal except for manifest error.
5. Although no one saw the injury inflicted upon plaintiff's intes-
   tate and there was no direct evidence of how the blow was
   struck, the evidence is *held* sufficient to sustain a verdict that
   the injury to his head which resulted in his death was inflicted
   by the sudden flying back of one of the levers of a scraping
   machine which he was operating on defendant's coal dock; that
   by reason of the liability of the levers to fly back unexpectedly
   and strike the operator the appliance was not reasonably safe;
   and that its unsafe condition was the proximate cause of the
   death.
6. It will be presumed, in the absence of evidence to the contrary,
   that a servant for whose death recovery is sought was in the
   exercise of due care at the time he was injured.

7. The mother of an illegitimate son has, as regards recovery for his death by negligence, the same right as if he had been born in lawful wedlock.

8. In an action by a mother to recover for the death of her son, the giving of a contradictory instruction, in one part apparently denying her right to recover at all, and in another part stating correctly the standard by which to determine the amount of recovery, was not prejudicial to defendant.

9. There is no presumption from the mere relationship of the parties that the parent is a pecuniary loser by the death of the child, except for the period of minority.

10. In an action to recover damages on behalf of the parent for the death of an adult child, compensation must be limited to such amount as will measure the reasonable expectancy, as shown by the evidence, of pecuniary contributions by the child during the joint lives.

11. The evidence in this case is *held* not to warrant any recovery by the mother for death of her son, thirty-eight years old, it not sufficiently appearing that he was competent or disposed to contribute to her support, or that she was in need thereof, or that she had any reasonable ground to expect pecuniary benefit from him of any substantial amount.

12. The duty of the court on appeal is not limited by the reasons assigned for reversing or sustaining the decision of the trial court, but it is proper to consider any other ground there may be, within the exceptions and evidence, and this should be done where justice clearly demands it.

APPEAL from a judgment of the circuit court for Douglas county: FRANK A. ROSS, Circuit Judge. *Affirmed in part; reversed in part.*

Action to recover compensation for a personal injury, causing, as claimed, the death of plaintiff's intestate. The complaint contained two causes of action,—one for damages to the deceased and one for damages to his surviving mother.

The intestate, December 7, 1911, was an employee of defendant. He was required to operate the levers of a scraping machine so as to cause such machine to do the work of moving coal on the floor of a coal dock. His post was on a platform above the surface of the dock. The apparatus consisted of a combination of parts, including cables, drums, friction

appliances, eccentrics, movable hubs, and two levers four or five feet long. The drums and operating connections, including the two levers, were located on the platform. The levers, except as otherwise placed by the hands of the operator, stood perpendicular and a short distance apart. The operator was required to grasp one lever in each hand and, by properly manipulating them, cause the scraper on the floor to work as desired. When the power was on, the operator, in order to stop the machine, had to cross the levers by pressing the right-hand one to the left and the left-hand one to the right. While they were in such position and not held by hand they were liable to, unexpectedly, return to an upright position with considerable force. The claim of plaintiff was in harmony with this, and that deceased was obliged to stand in such a position that, in case of the levers flying back in manner aforesaid, they were liable to strike him injuriously in the head; that defendant negligently placed him at work without warning him of such danger and was negligent in not so equipping the levers that, when crossed to stop the machine, they would so remain until released by the operator. Plaintiff further claimed that, on the occasion in question, while deceased was performing his duties as he had been instructed to do, there was an unexpected flying back of the levers whereby he was struck in the head and so severely injured that he died some six weeks thereafter, leaving surviving, a mother to whose support he was accustomed to contribute; but no father, wife, or children. The matters referred to and such others were alleged, necessary to a cause of action to recover compensation for damages suffered by deceased, and damages caused to his said surviving mother. All allegations as to fault of defendant and as to the death having been caused by the levers flying up and striking were put in issue by the answer.

There was evidence, as the trial court viewed the matter, proving, or tending to prove, these evidentiary circumstances:

The deceased, up to the time it is claimed the injury occurred, was, substantially, a well man. His position in performing his duties was such that a sudden flying back of the levers was liable to strike him in the head if he was not on his guard in respect thereto. He was injured in the head at the time, alleged. There is no circumstance to account therefor except the one claimed. The levers were liable to so perform. The deceased was not warned of such liability. About 5 o'clock in the afternoon of the day the injury is claimed to have happened, the deceased was at his post and apparently in a normal condition. A few minutes later, at a point some sixty feet from his post, he was seen walking therefrom with his hand to his head and heard to exclaim that he had been hurt by the levers. The exclamation was made to a person whom he passed. Soon thereafter, and on the succeeding night, his face was observed to be swollen. From that time until the difficulty was very pronounced he did not act natural. He returned to the dock for a short time on one or two occasions after the alleged injury. After his death there was an autopsy, disclosing a fatal blood clot on his brain caused by external violence. The injury was of several weeks' standing. The levers were of gas pipe and, in case of flying up and striking the operator's head, were quite likely to injure him. He was required, or was liable in the course of his work, to take such a position that his head would be in the danger zone of the levers. There was no precaution by defendant to guard against liability of the levers so flying up after having been crossed and the hands of the operator removed therefrom. It was known to defendant, or ought reasonably to have been known to it, that the levers were liable to fly up. The deceased was an illegitimate child. He was thirty-eight years of age when he died. He left no wife nor lineal descendant. The mother was then about fifty-six years of age and in good health. She came to America when he was about eight years of age. When he was about thirteen years of age

she paid his passage to this country. He lived with her thereafter for a few years and then permanently left her home. On some occasions he gave her small amounts of money. She had a husband when he came to live with her in this country. Her situation, at the time of the trial, was this: She was living with her husband who was in rather poor health. He was only able to do light work. Otherwise, all members of the family, five sons and three daughters, were in good health. All were adults but two. Two of the daughters and two of the sons were married and had homes of their own. One ·son, about twenty-eight years of age, another about twenty-one, a third about twenty, and a daughter about eighteen, resided at home. The family lived in Duluth. The deceased had no property when he died. He had been accustomed to indulge in strong drink quite freely for some time before that event. When he had money he was liable to drink heavily and on such occasions his face was liable to become much swollen.

Counsel for defendant requested the court to instruct the jury as to loss sustained by the mother by the death of the deceased; first, that no such loss was recoverable; second, that no such loss was recoverable unless the jury were satisfied to a reasonable certainty that, had the accident not occurred, the deceased would have lived and, during his lifetime, would have rendered pecuniary assistance to the mother and only to the extent of such assistance. The two requests were combined and given in this form:

"You are instructed that plaintiff is not entitled to recover any damages in this cause because of the pecuniary loss claimed resulting from the death of the deceased. Unless you find from the evidence to a reasonable certainty that the deceased would have lived had it not been for the injury claimed to have been received on defendant's dock December 7, 1911, and that he would during his lifetime have contributed to the support and maintenance of the plaintiff, you are not permitted to award any damages in this case on ac-

count of his death. In no event are you permitted to award damages to the plaintiff in this case for the death of the deceased for any greater amount of money than you find from the evidence to a reasonable certainty he would have lived longer than he did. You are to consider in determining what if any damages plaintiff has sustained, the probability or lack of probability that the deceased would have remarried, and you are instructed that if the deceased had lived and remarried, the plaintiff would not then be entitled to any support or contribution from him or claimed damages after his death."

The jury found specially to this effect:

The deceased was injured by the flying back of the levers as claimed. Such injury was the proximate cause of his death. The levers were so adjusted that when properly operated they were liable to unexpectedly fly up, rendering them not reasonably safe for the person required to operate them. Such unsafe condition was the proximate cause of the injury. The deceased was not guilty of any want of ordinary care proximately producing his injury. Five hundred and forty dollars is required to compensate for the loss sustained by the deceased. One thousand five hundred dollars is required to compensate plaintiff (his mother) for the pecuniary loss she sustained.

Judgment was awarded for both the loss to the deceased and the loss to the mother as well.

*W. P. Crawford,* for the appellant.

For the respondent there was a brief by *Hanitch & Hartley,* and oral argument by *C. J. Hartley.*

The following opinion was filed June 17, 1914:

MARSHALL, J. Questions raised by counsel which are not referred to in what follows have been examined and passed as inconsequential because either not involving any error at all, or any of prejudicial character.

Minor matters which constitute the *res gestæ* of a major

subject are things so closely connected therewith as to be substantially involved therein and to explain or illustrate it. *Andrews v. United States C. Co.* 154 Wis. 82, 142 N. W. 487. It follows, as counsel for appellant contends, that there must be a material major circumstance in order that there be evidentiary *res gestæ,* and that the latter are not, primarily, competent to prove the former.

Here, contrary to the contention of counsel, the substructive element essential to give rise to illustrative features appeared. It was an injury, inflicted by physical violence, to the head of the deceased, resulting in his death. That was, clearly, the principal fact within the rule stated. *Insurance Co. v. Mosley,* 8 Wall. 397. The circumstantial evidence of that was, in view of the expert evidence, quite satisfactory. There were physical indications of an injury to the head of the deceased which were first noticeable several weeks before his death and were progressive in manifestation up to the happening of that event. The autopsy which followed showed a recent rupture of a blood vessel under the table of the skull, the escape of blood, the formation of a blood clot on the brain and consequent complications, eventuating in death. There was believable expert evidence to the effect that the wound in the head was of some days' or weeks', more probably the latter, standing and, within reasonable probability, was inflicted at the time of the claimed happening thereof and was produced by external violence. Any one of several circumstances might produce such an injury, but the evidentiary indications in the particular case pointed to external violence. There was conflicting evidence but fair room therein for the jury to have reached the conclusion that the deceased was wounded at the time he ceased working and complained, as he left his post, that he had been hurt by the lever.

So we reach the question of whether the evidence that the deceased declared, momentarily after he left his post, with a manner indicating pain in the head, that he had been hurt by

the lever, was matter of *res gestæ*.    That occurred a few min-
utes after he was seen at his work in a normal condition and
just after he deserted his place, holding his hand to his head
indicating that he was suffering from pain therein.

There is no definite limitation as to time and circumstances
by which to determine when a minor circumstance is involved
in a major matter so as to illustrate and explain it.    There is
a dividing line, dependable upon the circumstances of each
particular case, determinable by the court as matter of law.
On one side the circumstance is relevant and competent and
entitled to more or less weight according to the nature of the
case.    On the other side, it is mere hearsay and not compe-
tent.    On which side it should be placed in any particular
situation is matter of competency; therefore, as in any other
such case, the decision in respect to it is unassailable except
for manifest error.    *Emery v. State,* 101 Wis. 627, 78 N. W.
145; *Hupfer v. Nat. D. Co.* 119 Wis. 417, 96 N. W. 809;
*Kavanaugh v. Wausau,* 120 Wis. 611, 98 N. W. 550.    If
the trial judge reasonably concludes that the circumstance is
within the field of *res gestæ,* he is justified in admitting the
evidence and leaving the weight of it to the jury.    In the
language of the writer, speaking for the court on another oc-
casion:

"Since a minor circumstance cannot be properly said to be
a part of the *res gestæ* as to the major matter, unless it is so
connected with the latter as to speak for itself, as it is said,
indicating the character of the main fact, such minor circum-
stance, in order to fall within the field of *res gestæ,* must
necessarily be undesigned, and so must have an unbroken
causal relation to the main subject of inquiry.    At the point
where that causal relation is so interrupted by time or other
circumstances that what lies further on no longer appreciably
illustrates the character of the main fact, is the boundary line
between what is and what is not *res gestæ*.    There is no con-
trolling rule as to the length of time between the happening
of the main fact and that of the minor incident claimed to
characterize the former, by means of which the validity of

the claim in that regard can even be established *prima facie.* The time which is sufficient to break the chain under some circumstances would not be under others. Under some the time might be very brief and under others it might be considerable. When the claimed evidentiary circumstance is so far disassociated with the main fact as not to be appreciably considered an incident of it, it is mere hearsay, not *res gestæ.*" *Johnson v. State,* 129 Wis. 146, 152, 108 N. W. 55.

It is evident from the foregoing that the evidence in question was proper. The citations amply illustratively support that. *Andrews v. United States C. Co.* 154 Wis. 82, 142 N. W. 487, is another apt illustration. There, momentarily after a person had been fatally shot in the presence of a second person, upon others coming upon the scene, one of the witnesses of the tragedy made declarations respecting the occurrence. Here there was not the time for reflection or opportunity and motive for making up a story, or circumstances of deliberate relation of a past transgression, which was said in the *Johnson Case* to render a matter too remote to be within the boundaries of *res gestæ.* There were, on the contrary, pretty fair indications that the declaration was impulsive, voicing the cause of an existing circumstance which was so recent as to in effect include the minor incident.

Fully appreciating the rule that, in a case of this sort, recovery cannot properly rest upon mere conjecture but must be grounded on evidence fairly warranting a finding to a reasonable certainty, without going into the details of the evidence to demonstrate the soundness of our conclusion, we are constrained to say that, while no one saw the injury inflicted upon the deceased and there is no direct evidence of how the blow was struck, which the evidence tends to show was delivered upon his head, there are many circumstances pointing, quite persuasively, to the particular cause of the blow claimed. There is ample evidence that the levers were liable to unexpectedly fly up in such a way that such an injury as the one said to have been inflicted was within reasonable probabilities. There is no evidence of the deceased having been otherwise

struck on the head. True, there was no affirmative evidence that he was not guilty of contributory negligence, but none was necessary. Presumably, in the absence of any evidence to the contrary, he was in the exercise of ordinary care at the time he was hurt. That appellant was negligent in subjecting its employee to the danger created by the levers, if it were as serious as there is evidence tending to prove, does not seem to be denied. Certainly the jury was amply warranted in finding that the appliance deceased worked with was not reasonably safe. Appellant knew, or ought to have known, such condition, and we are constrained to hold, there is warrant in the evidence for the finding that such condition proximately caused the death of the intestate.

It is contended that the recovery for loss to the mother of the deceased is improper because the deceased was an illegitimate. It is useless to review the conflict of authority on this point. The policy of our written law is to give an illegitimate, as regards the mother, substantially the same status as a child born in lawful wedlock. That was the situation when the law as it now exists respecting recoveries for loss accruing to ancestors by the negligent killing of their children, was enacted. The legislature must have appreciated that in providing for a recovery for the benefit of the lineal ancestors in default of there being lineal descendants. Sec. 4256, Stats. The statute is general. It makes no discrimination between lineal ancestors of illegitimates and those of legitimates. The former have inheritable and descendible blood as to the mother. Secs. 2273, 2274. That is not so as to the father, especially in the absence of a statutory acknowledgment of paternity or legitimization by marriage. So while there is reason for excluding the father of an illegitimate from the privileges of the statute there is none as to the mother.

Questions as to the status of the maternal ancestor of an illegitimate in a case of this sort have been treated variously, as counsel for the parties concede; but as the subject is gov-

erned by statute, judicially construed, we need not take time to refer to decisions elsewhere. The decision here must rest upon our own statute, viewed in the light of the legislative purpose in enacting it.

The trial court evidently made a mistake in giving the instructions which might well have prejudicially confused and misled the jury. The infirmity is so obvious that the wonder is that it was not promptly called to the court's attention. Probably the judge intended to decide against appellant on the contention that the mother of an illegitimate child is not within the privilege of the statute and to give the limit of the recovery in the words of counsel's second request, as a proviso to the one, that there could be no recovery at all. The first request was appropriate if the mother of deceased was not within the privilege of the statute, and likewise in case of the evidence not warranting a finding of pecuniary loss. By giving the two as separate sentences, the effect was to instruct both ways,—that there could be no recovery at all, and that there could be but not in excess of such sum of money as would measure the pecuniary benefits which, with reasonable certainty, the mother would have received from the deceased had he lived. It may be that the part commencing with the word "unless" and covering the subject of recoverable loss, was read as a proviso to the part which, by itself, denied any right of recovery on the evidence, and that the reporter of the court made the mistake of uniting the two as we find them in the record. But let that be as it may, it is considered that no hurt was done. If the evidence warranted a recovery the standard by which to determine the amount was properly stated.

In case of a claim made by the ancestor under the statute there is no presumption, from the mere relationship of the parties, that the parent is a pecuniary loser by the wrongful termination of the child's life, except for the period of minority. Therefore there can be no recovery for the period after minority in the absence of evidence showing, to a rea-

sonable certainty, such loss, and, with some reasonable probability, the amount of it. *Potter v. C. & N. W. R. Co.* 21 Wis. 372; *Wiltse v. Tilden,* 77 Wis. 152, 46 N. W. 234; *Tuteur v. C. & N. W. R. Co.* 77 Wis. 505, 46 N. W. 897; *Thompson v. Johnston Bros. Co.* 86 Wis. 576, 57 N. W. 298.

The general nature of the evidence required in such a case as this is such as will indicate present or probable future dependence of the ancestor upon pecuniary assistance from the child, competency and disposition to respond to parents'' needs, and the probable extent of such needs. As evidence in such a case must, necessarily, point far into the future, it can never be otherwise than quite general and the result such fair estimate as the judgment of the jury can reasonably make, keeping in view, as the circuit judge suggested, that compensation must be limited to only such as will measure the reasonable expectancy, as shown by the evidence, which the parent had at the time of the fatal event of pecuniary contributions by the child during the continuance of the joint lives, in view of the parent's age, the need upon the one side, and the competency and disposition on the other, having due regard to the habits, the previous accomplishments, the ability and disposition to work and earn money, the present possessions, the liability to have personal family needs, and all other circumstances bearing on the question.

In view of what has been said, is there any evidence in this case to warrant the finding that the mother of the deceased lost the sum of $1,500, or any sum, by his death?

There was a general exception to the verdict and proper motions made and exceptions to rulings to raise the question discussed at this point, though on the argument counsel only urged as ground of excessiveness, the illegitimacy of the deceased. However, it is proper to consider any other ground there may be, within the exceptions and evidence, and that should be done where justice clearly demands it. This court's duty is not limited by the reasons assigned for reversing or sustaining a decision complained of. It extends as far

as the justice of the case, as shown by the record, requires. To see that justice prevails is the overshadowing controlling function of the court. To effectuate that the court aims to always ignore technicalities, and often goes beyond the mere claims of counsel, avoids or corrects their mistakes and negligences and those of the trial court as well, and proceeds to a finality, often regardless of counsel's concessions to the detriment of their clients, or their stipulations beyond their competency.

As indicated in the statement, the deceased was about thirty-seven years of age when he died. His habits were such that his expectancy of life was below normal though probably greater than that of the mother. Her expectancy was about sixteen years. The deceased commonly used all his earnings for his own support and pleasure. He had no accumulations and was accustomed to abandon his work and indulge in dissipation for a considerable period after each pay day and even to neglect paying his board bills. His mother, as late as about a year before he died, tried to have his employer aid her in recovering out of his wages compensation for her having expended money to pay his passage to this country. She was in good health and had a large family of sons and daughters who were living with or near her, all of adult age, or nearly so, and in good health. Four of her children, three sons and a daughter, lived with her. Her husband was somewhat infirm but able to do light work. There is an absence of evidence that she needed any assistance from the deceased, or expected any, or that he was competent or disposed to furnish any, except she said: "He would bring me money when he had it. He would give me some every month or so. I did not keep any account of how much he gave me, $5 or $10 at a time. I most always asked him for money. When he had it, why, he gave it to me." That needs to be considered in connection with all other evidence, the fact that there is no corroboration of it and that she endeavored, as before stated, only about a year before her son

died to have his employer aid her in recovering out of his wages his passage money to this country; that the times when the contributions were made were quite remote and could not be remembered with any definiteness as to frequency, time, or amount.

Now how could a jury conclude from the basis stated, to a reasonable certainty, that the death of the deceased caused a pecuniary loss to his mother of a present value of $150 per year or an equivalent of about $12 per month during her natural life? We are constrained to hold that there is no such basis. There is little or no room in the evidence for holding that deceased was competent or disposed to contribute to his mother's support, or that she was in need thereof, or had any reasonable ground to expect pecuniary benefit from him of any substantial amount. It does not seem that the jury comprehended the court's instructions in respect to the matter. The situation shown by the evidence hardly seems favorable enough to warrant more than a belief in mere possibility that, had the deceased lived, he might have been of pecuniary assistance to his mother. Such recoveries must have a more substantial basis than that to rest upon. Therefore, we are constrained to hold that it would be unjust to appellant to burden it with any recovery for loss of pecuniary benefits to the mother of deceased attributable to its fault.

*By the Court.*—The judgment on the cause of action for recoverable loss under the statute, sec. 4256, is reversed, and the judgment for damages caused to the deceased is affirmed. The record is remanded to the circuit court with directions to dismiss without costs as to the cause of action under the statute. No costs are allowed to either party in this court, except clerk's fees which are awarded to appellant.

Each party moved for a rehearing. The motions were denied on October 6, 1914, without costs except that defendant was required to pay the clerk's fees.