ZASTROW, Respondent, vs. SCHAUMBURGER and another, imp., Appellants.

*October 13—November 9, 1932.*

For the appellants there were briefs by *Fisher, Cashin & Reinholdt* of Stevens Point, and oral argument by *R. T. Reinholdt*.

For the respondent there was a brief by *Genrich & Genrich,* attorneys, and *L. A. Pradt, Jr.* of counsel, all of Wausau, and oral argument by *Fred W. Genrich*.

NELSON, J. Just prior to and at the time of the collision which occurred on February 17, 1931, at about seven o'clock in the morning, the plaintiff's husband, as the servant of Wisconsin Valley Electric Company, was driving a Cadillac automobile in a southerly direction on U. S. highway 51, and the defendant Schaumburger, as the servant of defendant Loomans, was driving a Dodge truck along said highway

in the opposite direction. Highway 51, at the place of collision, was concreted to a width of eighteen feet which was free of snow or ice. The road was straight from a curve located about 750 feet south of the point of collision for a considerable distance to the north. Shortly before the collision both the Cadillac and the truck were being driven on their proper sides of the road. When the Cadillac was about 100 to 150 yards away from the truck, the latter was observed gradually to cross the black line at an obtuse angle. The Cadillac was turned off the concrete to the right and onto the shoulder to avoid hitting the truck. Just immediately prior to the collision, however, the truck turned more abruptly to its left at a more acute angle and crashed into the Cadillac, more or less head-on. Immediately after the collision the Cadillac came to a stop on the west shoulder of the roadway so that its left rear wheel was five and one-half feet from the edge of the concrete and its right front wheel was four feet away from the concrete. The truck, immediately after the collision, came to rest with its front end against the left front side of the Cadillac and in contact with it. The two cars immediately caught fire and both were completely destroyed. At the time of the accident the Cadillac was en route from Wausau to Madison. Besides the deceased, defendant Geisse and a Mr. Frederickson were occupants of that car. There was evidence tending to show that, taking into consideration the time when the Cadillac left Wausau and the distance it had traveled, it must have been operated at a high rate of speed in order to reach the point of collision at about seven o'clock in the morning.

Schaumburger resided at Wausau although employed by Loomans, who lived at Stevens Point. It was Schaumburger's custom to leave Wausau each morning at about 4:25 o'clock without eating his breakfast, drive to Stevens Point, eat his breakfast there, load up his truck, and then

drive back to Wausau and thence to Antigo and back to Wausau. The evidence showed that Schaumburger had attended a dance the night before at Wausau from about 9:30 until 12:30 to 1:00 o'clock and that he had slept only a little more than three hours before he arose to go to Stevens Point on the morning of the accident. This evidence was no doubt introduced to permit the jury to infer that defendant was either asleep or drowsy just prior to the collision and that the collision resulted from his negligent failure to maintain a sufficient and proper lookout. There was, however, evidence tending to show that Schaumburger stopped the truck and waited for two other bakery trucks to overtake him at a point three-fourths of a mile south of the point of the collision and that he then and there talked to one of the drivers about a matter of business. Between that point and the place of the collision there was a curve in the road which Schaumburger successfully negotiated. Schaumburger testified that while he was proceeding along said highway with due care he felt the left front of the truck settle down and that he realized that the left front tire was either going or had gone flat; that this had a tendency to pull the truck to the left; that he attempted to pull the truck back to its proper side of the road but failed to do so; that he applied both service and emergency brakes and attempted to stop the truck, but that as he applied the brakes the truck swerved still farther to the left and collided with the Cadillac. There was no other testimony as to the left front tire having gone flat or as to its actual condition immediately after the collision. Schaumburger and the surviving occupants of the Cadillac were seriously injured. The two other bakery trucks soon arrived upon the scene and the drivers thereof through heroic efforts extricated Frederickson, Schaumburger, and the deceased from the wrecked and burning cars. There was a dispute as to whether Geisse got out

of the Cadillac unassisted or whether he also was helped out by the drivers mentioned. The foregoing constitutes a fair statement of the facts.

The defendants contend (1) that the evidence is insufficient, as a matter of law, to support the finding of the jury that defendant Schaumburger was in any manner negligent; (2) that the deceased was negligent as a matter of law because he did not stop his car after seeing the truck begin to cross the black line; (3) that prejudicial error was committed by the court (a) in permitting Geisse, over the objection of defendants, to testify to a conversation which he had with Schaumburger about thirty minutes after the collision, and (b) in further permitting him to testify that the deceased was, to his knowledge, a careful driver; and (4) that the damages found are excessive.

1. Defendants' first contention is based upon the claimed verity that the left front tire of the truck went flat just prior to the collision and that the truck unavoidably veered to the left without negligence on the part of Schaumburger and in spite of anything that he could do. Defendants rely upon *Seligman v. Hammond,* 205 Wis. 199, 236 N. W. 115. That case involved a collision between two cars, a Packard traveling on its proper side of the roadway and a Nash approaching from the opposite direction which suddenly swerved across the road to its left and collided with the Packard. It appeared without dispute in that case that the left front tire of the Nash, which apparently did not come into forcible contact with the Packard, had sustained a blowout. It was there held that the evidence was sufficient to support the finding of the jury that the collision was not caused by the negligence of the driver of the Nash. The case at bar is not controlled by that case. In that case the fact of the blowout was undisputed and the jury found that the driver of the Nash which invaded the Packard's side of

the road was not negligent. In the present case the jury found that Schaumburger was negligent in respect to both lookout and control of his truck and keeping to his right side of the roadway. Had the jury found that Schaumburger was not negligent in permitting his truck to invade the Cadillac's side of the road, we would have a situation quite analogous to that found in the *Seligman Case*. The mere fact that there was no testimony offered to contradict the testimony of Schaumburger as to the flat tire did not render that fact a verity which the jury was bound to believe. The presence of the truck on the wrong side of the road would be sufficient, as stated in the *Seligman Case,* to support a finding of negligence, in the absence of evidence which satisfied the jury that the truck was on the wrong side of the road unavoidably, or without negligence on the part of Schaumburger. Whether the truck was on the wrong side of the road because of happenings over which Schaumburger had no control or was there as a result of his negligence must be held to be a jury question. We think the trial court committed no error in refusing to change the answers of the jury.

2. We have also concluded that defendants' second contention is without persuasive merit. Prior to the collision the Cadillac was being driven on its proper side of the road. While approaching the defendant's truck and at a distance estimated to be 100 to 150 yards, Mr. Geisse observed the defendant's truck commence gradually to cross the black line at an oblique angle. The deceased thereupon turned the Cadillac farther to the right to give the approaching truck clearance. At the time of the collision the Cadillac was traveling wholly upon the shoulder to the right of the concrete. The driver of the Cadillac had the right to assume that the driver of the truck would control it in obedience to the law of the road. There is nothing to show that either the deceased or Mr. Geisse knew in time, or ought to

have known from what could be observed at the time, that the truck would invade not only their side of the road but also the shoulder as well. Whether the deceased was guilty of negligence under the circumstances detailed we think was purely a jury question. It cannot be said that either the deceased or Geisse was guilty of negligence as a matter of law.

3. Mr. Geisse was permitted to testify, over the objection of the defendants, that shortly after the accident, while he was lying on the ground in the field, the following conversation took place between him and Schaumburger. Geisse asked: "What in hell was the matter with you?" Schaumburger replied: "What in hell was the matter with you? Why didn't you keep on your own side of the road?" Geisse then asked: "Why didn't you keep on your side of the road?" Schaumburger replied: "You go to hell, I am hurt worse than you are." On cross-examination Mr. Geisse testified that this conversation was had approximately thirty minutes after the collision. The court thereupon expressed the opinion that the time approximately fixed was quite a while after the accident, but refused to strike out the testimony as to the conversation, evidently being of the opinion that it was a part of the *res gestæ*. In this we think the trial court erred. Not only did the conversation occur so long after the accident as to render its admission as a part of the *res gestæ* exceedingly doubtful (*Steinhofel v. Chicago, M. & St. P. R. Co.* 92 Wis. 123, 65 N. W. 852), but its very substance seems to show that it was not of that nature which brings it within the *res gestæ* rule. In the rather recent case of *Kressin v. Chicago & N. W. R. Co.* 194 Wis. 480, 485, 215 N. W. 908, this court, speaking through Mr. Justice OWEN, said:

"In discussing the subject of *res gestæ*, it is said in 3 Wigmore on Evidence (1st ed.) at sec. 1747, that 'the typical case presented is a statement or exclamation, by an

injured person, immediately after the injury, declaring the circumstances of the injury, or by a person present at an affray, a railroad collision, or other exciting occasion, asserting the circumstances of it as observed by him.' And in sec. 1749: 'The utterance, it is commonly said, must be 'spontaneous,' 'natural,' 'impulsive,' 'instinctive,' 'generated by an excited feeling which extends without let or breakdown from the moment of the event they illustrate.' And in sec. 1750: 'There must be some shock, startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting. . . . The utterance must have been before there has been time to contrive and misrepresent, i. e. while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance.' The decisions of this court upon the subject are in harmony with this statement of the principle upon which the doctrine of *res gestæ* is based. *Johnson v. State,* 129 Wis. 146, 108 N. W. 55; *Andrzejewski v. Northwestern Fuel Co.* 158 Wis. 170, 148 N. W. 37; *Shiefel v. State,* 180 Wis. 186, 192 N. W. 386."

It seems clear to us under the established law that the conversation was inadmissible as part of the *res gestæ;* however, it does not follow that the conversation was inadmissible.

Sec. 325.28, Stats., provides as follows:

"In actions for damages caused by personal injury, no statement made or writing signed by the injured person within seventy-two hours of the time the injury happened or accident occurred, shall be received in evidence unless such evidence would be admissible as part of the *res gestæ.*"

The question therefore arises as to whether the conversation complained of is a statement "made by *the* injured person" within the meaning of sec. 325.28.

In *Buckland v. Chicago, St. P., M. & O. R. Co.* 160 Wis. 484, 152 N. W. 289, this court, speaking through Mr. Justice BARNES, with respect to the meaning of sec. 4079*m* (substantially like sec. 325.28, the present statute), said:

"However, we think the statute was intended to apply to and cover statements procured for the purpose of being

used as evidence against the injured party in any action he might thereafter bring; in other words, statements procured for purposes of defense."

It is quite obvious that the statute was particularly directed to the evils involved in the unfair practice of procuring statements, whether signed or unsigned, from an injured person after the accident happened or the injury occurred, for use in defending a suit which might thereafter be brought by the injured person against the person or corporation alleged to be liable. It was no doubt the thought of the legislature that it was unfair to procure statements from an injured person so shortly after his injury, when his physical and mental condition might be such as to prevent him from properly safeguarding his rights.

The present action is one brought by the widow of the deceased against the defendants. The statement complained of is not one procured from the injured person in this action, the deceased, but is a statement made by a defendant. It would be clear who was "the injured person" in this action had not a defendant also been injured; the fact that defendant Schaumburger was injured does not bring his statements within the prohibitions of the statute. We think the conversation was admissible in this action.

Mr. Geisse was permitted to testify that the deceased was a very careful driver. This we think was improper for the reason that it was wholly immaterial to the issues being tried whether Zastrow was, prior to the immediate events involved in the accident, a careful driver. His skill and competency as a chauffeur were not questioned. The testimony given did not relate to the care which he exercised at the time of the collision, so was not subject to the objection that the answer was a conclusion of the witness on a matter material to the issue. Whether or not he was in general a careful driver was not relevant to the inquiry as to whether, just prior to or at the time of the collision, he exercised or

failed to exercise ordinary care. Since there was practically no dispute as to what he did in the management and control of the Cadillac just prior to the accident or as to where the collision occurred, we conclude that the defendants were not prejudiced by the admission of that testimony.

4. The jury assessed the plaintiff's damages at $8,500. This sum is claimed to be excessive. The deceased, at the time of his death, was twenty-nine years of age, was strong and able-bodied. He left surviving him the plaintiff his widow, and two daughters aged nine and six years respectively. At the time of his death the plaintiff and deceased were not keeping house. Due to the fact that deceased had no employment in November, 1930, the plaintiff and her children went to reside with her mother at Montello. The deceased had theretofore been employed by Wisconsin Valley Electric Company from July 18 to November 1, 1928; from March 29 to July 15, 1930, and from February 1 to February 17, 1931, the date of his death. During the time mentioned he was not otherwise employed except for a period of three months at the Studebaker garage in Wausau. He was employed at the garage during the time that his wife and children were staying at Montello. While so employed he sent only $5 to his wife. How much he earned at the garage or what he did with his earnings does not appear. Whether at the time the plaintiff went to stay with her mother there were debts pressing for payment does not appear. There was evidence that the plaintiff started a divorce action against deceased in 1929 which was settled and a reconciliation effected the day following its commencement. It is undisputed that at the time of his death he was earning $135 per month, and that his employment gave promise of being reasonably permanent. His employment theretofore was such that he might reasonably expect to earn about $1,520 a year. Considering that he was only twenty-

nine years old and had a long life expectancy, was strong and able-bodied, and was so qualified and constituted as to be fortunately employed at a time when unemployment so generally prevailed, we do not feel that we would be justified in cutting down the damages found by the jury and approved by the trial court.

*By the Court.*—Judgment affirmed.