HEIDEN, d/b/a HEIDEN WINE & LIQUOR MART, Appellant,
v. RAY'S, INC., and others, Respondents.*

*April 10—May 9, 1967.*

* Motion for rehearing denied, with costs, on June 30, 1967.

634

For the appellant there was a brief and oral argument by *Carl F. Schetter* of Milwaukee.

For the respondents there was a brief and oral argument by *Francis X. Krembs* of Milwaukee.

HANLEY, J. The second amended complaint herein alleged that the three defendants had made various sales of liquor at prices which were less than "cost" as defined in sec. 100.30 (2) (a), Stats., and that "plaintiff is threatened with loss and injury to his business as a result of defendants' violations . . . ."

The answer of the defendants denied generally the allegations of the second amended complaint.

Plaintiff's affidavit in support of his order to show cause why summary judgment should not be entered in his favor set forth the following sales by defendants of liquor at less than "cost" as defined in sec. 100.30 (2) (a), Stats. 1963:

| Date | Item | "Cost" | Selling Price |
|------|------|--------|---------------|
| 10/10/64 | 6 qts. Fleischmann's Preferred Whiskey | 25.36 | 25.18 |
| 10/10/64 | 6 qts. Fleischmann's Gin | 23.75 | 23.05 |
| 12/16/64 | 12 fifths Canadian Club Whiskey | 60.80 | 59.00 |
| 12/16/64 | 12 fifths Christian Brothers Brandy | 42.62 | 41.71 |
| 12/16/64 | 12 fifths Grant's 8 Year Old Scotch | 66.20 | 64.50 |

Defendants do not controvert the facts established in plaintiff's affidavits relating to sales by defendants at a retail price of less than six percent markup, specified in sec. 100.30 (4), Stats. 1963.

So far as material here sec. 100.30, Stats. 1963, provides as follows:

"100.30 **Unfair sales act.** (1) POLICY. The practice of selling certain items of merchandise below cost in order to attract patronage is generally a form of deceptive advertising and an unfair method of competition in commerce. Such practice causes commercial dislocations, misleads the consumer, works back against the farmer, directly burdens and obstructs commerce, and diverts business from dealers who maintain a fair price policy. Bankruptcies among merchants who fail because of the competition of those who use such methods result in unemployment, disruption of leases, and nonpayment of taxes and loans, and contribute to an inevitable train of undesirable consequences, including economic depression.

"(2) DEFINITIONS. When used in this section unless context otherwise requires:

"(a) 'Cost to retailer' means the invoice cost of the merchandise to the retailer within 30 days prior to the date of sale, or replacement cost of the merchandise to the retailer, whichever is lower; less all trade discounts except customary discounts for cash; to which shall be added freight charges not otherwise included in the invoice cost or the replacement cost of the merchandise as herein set forth, and cartage to the retail outlet if done or paid for by the retailer, which cartage cost, in the

absence of proof of a lesser cost, shall be deemed to be three-fourths of one per cent of the cost to the retailer as herein defined after adding thereto freight charges but before adding thereto cartage and markup and a markup to cover a proportionate part of the cost of doing business, which markup, in the absence of proof of a lesser cost, shall be 6 per cent of the cost to the retailer as herein set forth after adding thereto freight charges and cartage but before adding thereto a markup.

"...

"(3) ILLEGALITY OF LOSS LEADERS. Any advertising, offer to sell, or sale of any item of merchandise either by retailers or wholesalers, at less than cost as defined in this section with the intent or effect of inducing the purchase of other merchandise or of unfairly diverting trade from a competitor, impairs and prevents fair competition, injures public welfare and is unfair competition and contrary to public policy and the policy of this section.

"(4) PENALTIES. Any retailer who, with the intent of inducing the purchase of other merchandise or of unfairly diverting trade from a competitor or otherwise injuring a competitor, shall advertise, offer to sell, or sell at retail any item of merchandise at less than cost to the retailer as defined in this section; or any wholesaler who, with intent of inducing the purchase of other merchandise or of unfairly diverting trade from a competitor or otherwise injuring a competitor, shall advertise, offer to sell, or sell at wholesale any item of merchandise at less than cost to the wholesaler as defined in this section, shall be fined not less than $50, nor more than $500 for the first offense and not less than $200 nor more than $1,000 for the second and each subsequent offense, or, for each offense, imprisoned not less than one month nor more than 6 months, or both. Evidence of any advertisement, offer to sell, or sale of any item of merchandise by any retailer or wholesaler at less than cost as defined in this section shall be prima facie evidence of intent to induce the purchase of other merchandise, or to unfairly divert trade from a competitor, or to otherwise injure a competitor.

"(5) SPECIAL REMEDY. In addition to the penalties provided, the courts of this state are invested with jurisdiction to prevent and restrain violations of this section, and it shall be the duty of the several district attorneys to institute proceedings in equity to prevent and restrain violations. Any person damaged, or who is threatened

with loss or injury, by reason of a violation of this section, shall be entitled to sue for and have injunctive relief in any court of competent jurisdiction against any damage or threatened loss or injury by reason of a violation hereof.

"(6) EXCEPTIONS. The provisions of this section shall not apply to sales at retail or sales at wholesale where:

" . . .

"(g) The price of merchandise is made in good faith to meet competition; . . ."

The following issues are raised on this appeal:

1. Was the trial court's denial of plaintiff's motion for summary judgment proper on the ground one seeking an injunction under sec. 100.30 (5), Stats. 1963, must prove damages or the threat of loss or injury and plaintiff's affidavits failed to establish such loss or injury?

2. Does the affidavit of defendants in support of their motion for summary judgment demonstrate they set their prices in good faith to meet competition, thus under sec. 100.30 (6) (g), Stats. 1963, establishing a defense to plaintiff's action and entitling defendants to summary judgment?

Plaintiff contends that because of defendants' admitted sales plaintiff has established a cause of action entitling him to judgment and there could be no defense to the action.

While the defendants' motion for summary judgment and affidavits in its support attempted to establish a defense to plaintiff's action and are, therefore, relevant in considering the merit of plaintiff's motion for summary judgment and the trial court's denial thereof, the plaintiff's motion for summary judgment appears to be defective on its face and will be considered first on its own merits without regard to the defendants' alleged defense.

Sub. (5) of sec. 100.30, Stats. 1963, provides that ". . . Any person damaged, or who is threatened with loss or injury, by reason of a violation of this section

. . ." is entitled to an injunction. Clearly, a vital consideration is damage or threat of loss.

Plaintiff's adverse examination before trial demonstrates that his allegation of loss or threat of injury was based on two things: First, plaintiff felt that whenever there is a violation of the Unfair Sales Act he as an honest businessman suffers a loss or threat of injury. This is not an evidentiary fact but merely plaintiff's conclusion. Affidavits in support of a motion for summary judgment must allege evidentiary facts, not merely conclusions. Sec. 270.635 (2), Stats. Secondly, plaintiff bases his claim of loss and threat of injury on one instance, taking place on December 16, 1964. On that date Jean Henke went to plaintiff's place of business and inquired about the price of a case of Grant's 8-Year-Old-Scotch. She had been purchasing Grant's from plaintiff and other liquor dealers in one- to three-bottle lots, and plaintiff told her she would save nothing on a case from him because he was already giving her the lowest possible price on three-bottle lots.

Plaintiff told her that if she could get Grant's at less than $68 per case he would give her $10. Mrs. Henke called defendants who quoted a price of $64.50 per case for Grant's 8-Year-Old Scotch. Whereupon Mrs. Henke purchased a case from defendants and received the $10 offered by plaintiff. Since that time Mrs. Henke has been purchasing liquor from the plaintiff.

We do not believe this one incident of a lost sale under the described circumstances is sufficient to establish a *prima facie* loss or threat of injury. The plaintiff conceded that beyond the lost sale to Mrs. Henke and his theory that a violation of the Unfair Sales Act must necessarily harm him, his statement that he suffered loss was based on "sheer speculation."

Plaintiff contends there is a presumption of injury or threat of loss arising from the mere fact a sale was made below cost. Plaintiff in this respect confuses the Unfair

Sales Act's criminal and civil remedies. It is true that sec. 100.30 (4), Stats. 1963, makes sales below cost with the intent to induce the purchase of other merchandise, or to unfairly divert trade, or to injure a competitor, a misdemeanor and also provides that evidence of an advertisement, offer to sell or sale of an item below cost establishes *prima facie* the intent to violate the section. This presumption of intent to violate the Unfair Sales Act from the fact of a sale below cost was discussed in *State v. Ross* (1951), 259 Wis. 379, 48 N. W. (2d) 460.

However, there is no presumption of loss or threat of injury to competitors from the fact of a sale below cost arising out of sec. 100.30 (5), Stats. 1963, nor does *State v. Ross* discuss a presumption of injury.

There was no error in the denial of plaintiff's motion for summary judgment, because a basic element of plaintiff's cause of action—past or threatened injury—was not shown by evidentiary facts in his affidavits, and thus plaintiff did not "establish his cause of action sufficiently to entitle him to judgment." Sec. 270.635 (2), Stats.[2]

Defendants also moved for summary judgment by attempting to establish a defense under sec. 100.30 (6) (g), Stats. 1963, by showing the prices below cost were ". . . made in good faith to meet competition." The affidavit in support of defendants' motion alleged a number of sales of liquor below cost in the Milwaukee area during 1964 and 1965. The allegations of the affidavit indicate that violations of the Unfair Sales Act were not uncommon in the Milwaukee area during the time of sales by defendants of which plaintiff complained.

---

[2] Sec. 270.635 (2) provides in part that summary judgment:

". . . may be entered in favor of either party, on motion, upon the affidavit of any person who has knowledge thereof, setting forth such evidentiary facts, . . . as shall, if the motion is by the plaintiff, establish his cause of action sufficiently to entitle him to judgment; and, if on behalf of the defendant, . . . as shall show that his denials or defenses are sufficient to defeat the plaintiff, . . ."

The trial court in its decision denying plaintiff's motion for summary judgment and granting the defendants' motion also noted that on November 5, 1964, a Milwaukee county assistant district attorney warned defendants about sales at less than cost as defined in sec. 100.30 (2) (a), Stats. 1963, and also sent a letter to all liquor retailers in the county warning them to get their prices in line with sec. 100.30, because he felt violations were prevalent within the county on sales of three or more bottles.

The trial court concluded that the district attorney's letter and the defendants' affidavit pointing out sales and advertisements of liquor at less than the price under sec. 100.30, Stats. 1963, established a defense to plaintiff's action under sec. 100.30 (6) (g), and entitled the defendants to summary judgment.

Plaintiff attacks this conclusion on various grounds. First, it is contended that the affidavit of defendants establishes that they did not set their prices in good faith; second, the defendants did not meet the prices of their alleged competitors but, in fact, undercut them; third, the sales and advertisements set forth in defendants' affidavits do not even include sales of some of the products sold by the defendants; fourth, the defendants' affidavit does not cover sales of certain brands included in the complaint; and, fifth, the defendants' affidavit attempts to show defendants were "meeting" prices by proof of sales and ads occurring after sales by defendants.

The above contentions on behalf of the plaintiff are supported by the evidentiary facts contained in the affidavits. We do not believe the sales and advertisements reflected in the defendants' affidavit can be said to have prompted the sales by defendants. Therefore, the only value of defendants' affidavit is to show a general disregard of sec. 100.30, Stats. 1963, in the Milwaukee area.

The rationale appears to be: "Everybody was doing it so these defendants were only meeting competition."

Finally, even assuming the retailers referred to in defendants' affidavit represented "competition" and disregarding the time element, it cannot be said that defendants' price of $64.50 for a case of Grant's was intended to "meet" Thrifty Liquor & Smoke Shop's price of $66.15 or that defendants' price of $59 for a case of Canadian Club was intended to "meet" Bay View Liquor's price of $60.50. Even if defendants were unaware of the illegality of their competitors' prices, they did not have a right under the language of sec. 100.30 (6) (g), Stats. 1963, to undercut competition, but only to "meet" it.

A somewhat similar Oklahoma statute was construed in *Safeway Stores v. Oklahoma Retail Grocers Asso.* (Okla. 1957), 322 Pac. (2d) 179. In that case an injunction was sought against Safeway for selling goods at less than "cost" as defined in the Oklahoma Unfair Sales Act. Safeway did not deny the sales, but contended that they came within the terms of a statute providing:

"Any retailer or wholesaler may advertise, offer to sell, or sell merchandise at a price made in good faith to meet the price of a competitor who is selling the same article or products of comparable quality at cost to him as a wholesaler or retailer. . . ." 15 Okla. Stats. Anno. (1951), sec. 598.7.

The Oklahoma court pointed out at page 181:

". . . In the instant case, Safeway obviously and admittedly did not, in good faith, set the price of its articles which were subject to the Unfair Sales Act on the basis of its competitors' prices, which it in good faith believed to be legal prices under the Unfair Sales Act, but on the contrary it set illegal prices for the sole purpose of meeting prices of its competitors, which it thought to be illegal."

The court noted that:

". . . the appropriate remedy was by injunction and not by retaliation or retaliatory action, such as was practiced by Safeway. . . ." *Safeway Stores v. Oklahoma Retail Grocers Asso., supra,* at page 182.

The United States supreme court agreed in affirming the Oklahoma court [3] and held that Safeway had no right to engage in the very type of price war the statute was intended to prevent.

In light of what was said in *Safeway, supra,* it is inconceivable that our legislature could have intended to permit price wars under the guise of meeting competition when it enacted sec. 100.30 (6) (g), Stats. 1963.

We are of the opinion that defendants' affidavit does not *prima facie* show a defense under sec. 100.30 (6) (g), Stats. 1963, and ordinarily plaintiff accordingly would be entitled to a trial. Sec. 270.635 (6); *Lathan v. Journal Co.* (1966), 30 Wis. (2d) 146, 156, 140 N. W. (2d) 417. However, we are of the further opinion that because the plaintiff conceded that beyond the loss of the sale to Mrs. Henke and his theory that a violation of the Unfair Sales Act must necessarily harm him and his statement that he suffered loss was based on "sheer speculation," there is no issue to be resolved by a trial and for that reason the defendants are entitled to the summary judgment dismissing the action on its merits.

*By the Court.*—Judgment affirmed.

HALLOWS, J., took no part.

---

[3] *Safeway Stores v. Oklahoma Grocers* (1959), 360 U. S. 334, 336, 337, 79 Sup. Ct. 1196, 3 L. Ed. (2d) 1280.