EDELER and wife, Appellants, v. O'BRIEN and others, Respondents.

*April 8—May 7, 1968.*

692

For the appellants there was a brief by *St. Peter &
Hauer*, attorneys, and *George M. St. Peter* of counsel,
all of Fond du Lac, and oral argument by *George M.
St. Peter*.

For the respondents David O'Brien and General Casu-
alty Company of Wisconsin there was a brief by *John P.*

*McGalloway, Sr.,* and oral argument by *William D. McGalloway,* both of Fond du Lac.

For the respondents James Kiesner and Heritage Mutual Insurance Company there was a brief by *Holden, Halvorsen & Bjork,* attorneys, and *Peter A. Bjork* of counsel, all of Sheboygan, and oral argument by *John R. Holden.*

HANLEY, J. The following issues are presented by the instant appeal: (1) Does a wife have a cause of action for loss of consortium of her husband who has been injured by the negligent acts of a third person; (2) did the trial court err in refusing to hold defendant Kiesner causally negligent as a matter of law; (3) did the trial court err in applying the emergency doctrine for the benefit of James Kiesner and Heritage Mutual Insurance Company; and (4) is a statement of a party made within seventy-two hours after the accident admissible in an action not brought by him for his own injuries?

### *Action for Loss of Consortium.*

With respect to Marie Edeler's action the issue is not whether her action is well pleaded but whether the court's decision in *Moran v. Quality Aluminum Casting Co.,*[1] establishing the cause of action in the wife for loss of consortium, applies retroactively. The court recently decided this question in favor of retroactivity in *Fitzgerald v. Meissner & Hicks, Inc.,* ante, p. 571, 157 N. W. 2d 595. The court also modified the requirement in *Moran* that the wife's cause of action be joined with that of the husband for his injuries. If the husband has commenced an action for his injuries and the trial has been concluded, it is now permissible for the wife to assert her cause of action separately, but her damages must be limited to the items other than the loss of her

---

[1] (1967), 34 Wis. 2d 542, 150 N. W. 2d 137.

husband's services. Under the above authorities we conclude that the order sustaining the demurrer to the portion of the complaint asserting Marie Edeler's action for damages for loss of consortium must be reversed.

## Question of Kiesner's Negligence.

Considering the contention that Kiesner should have been held causally negligent as a matter of law, it is necessary to relate some of the facts surrounding the accident.

The accident occurred on January 31, 1965, at 4:30 p. m. It was still daylight. The road was dry except for possibly a few patches of ice. Lee Edeler was riding in the front seat of Kiesner's automobile. Kiesner's wife and two children were in the back seat. Kiesner's automobile was proceeding east on County Trunk F. O'Brien, aged nineteen at the time of the accident, was proceeding west toward his home after having been at an all-night stag party where he had consumed a quantity of beer. He subsequently slept for two hours, went to church that morning, and had three bottles of beer that afternoon. The accident occurred on a stretch of highway between two knolls which are approximately 1,000 feet apart.

Kiesner's version of the accident is as follows:

As he approached the top of the westerly knoll, traveling at a speed of 40 to 45 miles per hour, he first saw the O'Brien automobile traveling west apparently in its own lane. He placed it east of the other knoll, but estimated the distance between the two automobiles at that time to be 1,000 feet. When the vehicles were about 400 feet apart, O'Brien began to invade his lane. He estimated O'Brien's speed to be about the same as his own. Upon discovering O'Brien's automobile in his lane, he took his foot off the accelerator but did not sound his horn or attempt to turn in either direction. The accident occurred in Kiesner's lane. The right front end of

his automobile was damaged, whereas the center of O'Brien's car was damaged.

O'Brien's version was that he was traveling west on County Trunk F in his own lane at 40 miles per hour. He first saw the Kiesner automobile when his own automobile reached the top of the easterly knoll. At that point, the Kiesner vehicle was about 200 feet away from him, traveling in a straight line with its left wheels two feet over the center line. He took his foot off the accelerator as soon as he saw Kiesner but did not turn his wheel or attempt to brake.

Sandra Kiesner, James Kiesner's wife, testified that her husband was traveling at approximately 40 miles per hour on his own side of the road. She first saw the O'Brien car when it was an estimated 300 to 400 feet away, although she admitted that she was poor at judging distances. The O'Brien car then began pulling over toward the left lane until it was entirely in that lane. She did not see the impact because she was reaching for the children.

An eyewitness to the position of the cars after the impact, Mrs. Ervin Roehl, testified that both cars were in the south half of the roadway, Kiesner's lane of travel, and that the debris from the accident was in the south half of the roadway.

An expert witness, James Van Fleet, a licensed, professional engineer and a professor in the mechanical engineering department at the University of Wisconsin-Milwaukee, testified that he heard Mrs. Roehl's testimony and that, if the debris were located on the south half of the roadway, it would indicate that the accident happened on that portion of the road because debris drops immediately upon impact.

Lee Edeler did not testify to any of the facts surrounding the accident because he had no recollection of them.

The plaintiffs contend that Kiesner was negligent as a matter of law with respect to the management and

control of his vehicle after O'Brien invaded his lane, a fact which they are willing to concede. Their argument is that, traveling at 45 miles per hour, Kiesner had time in which to stop before the point of impact, his negligence consisting in the failure to stop and sound his horn. They also claim that the fact that the right side of the front end of Kiesner's automobile was damaged, whereas the damage to O'Brien's car was on the middle of the front end indicates that Kiesner was attempting to turn left just before the impact and that this raises an inference of negligence which Kiesner did not produce evidence to counteract. Plaintiffs quote the following language in *Geis v. Hirth* (1966), 32 Wis. 2d 580, 591, 146 N. W. 2d 459, in support of this last contention:

". . . The procedural effect of this inference is to shift the burden of producing evidence that plaintiff Geis' position on the wrong side of the highway was due to a nonnegligent cause, and enough evidence must be produced to support a finding to this effect. In the absence of sufficient evidence to support such a finding, the inference must be sustained. . . ."

However, plaintiffs neglect to quote the sentence in the *Geis Case* immediately following the portion they quote:

". . . In *La Vallie v. General Ins. Co.* (1962), 17 Wis. (2d) 522, 117 N. W. (2d) 703, the court expressly states that the emergency doctrine refutes any inference of negligence which occurred because the plaintiff was driving on the wrong side of the road."

We are of the opinion that if the emergency doctrine was properly given it was still in the province of the jury to absolve Kiesner of all negligence.

*The Emergency Instruction.*

The emergency instruction is proper when three conditions are met:

(1) The party seeking its benefits must be free from the negligence which contributed to the creation of the emergency; (2) the time element in which action is required must be short enough to preclude the deliberate and intelligent choice of action; and (3) the element of negligence inquired into must concern management and control. *See Gage v. Seal* (1967), 36 Wis. 2d 661, 154 N. W. 2d 354, 155 N. W. 2d 557; *Geis v. Hirth, supra.*

*Geis* noted that the doctrine can be applied in two ways: (1) When the time interval is so short that the reaction is instinctive or intuitive, an emergency can be found to exist as a matter of law; (2) when the time element is not so short, it may still be short enough to create an issue of fact for the jury. *See Cook v. Thomas* (1964), 25 Wis. 2d 467, 131 N. W. 2d 299.

In the case at bar the jury was entitled to believe Kiesner's testimony that when the vehicles were about 400 feet apart O'Brien began to invade his lane. Such testimony implies that he had O'Brien in view at the moment the invasion of his lane began. The record is devoid of any inference that Kiesner negligently caused O'Brien to invade his lane or that he did not detect O'Brien's presence there as soon as he should have. Thus, the jury could have considered that the first condition for the application of the emergency doctrine was met.

With respect to the second condition—the time element —the jury was entitled to believe that each car was traveling at a speed in the area of 45 miles per hour and that O'Brien's invasion of Kiesner's lane took place when the vehicles were about 400 feet apart. Under those circumstances Kiesner had about three and one-half seconds to avoid the impact. In *Wanserski v. State Farm Mut. Automobile Ins. Co.* (1964), 23 Wis. 2d 368, 127 N. W. 2d 264, the court held that a five-second time span created an issue of fact for the jury. In *Schumacher v. Klabunde* (1963), 19 Wis. 2d 83, 119 N. W. 2d 457, the court held that a three-second time span created an emergency as a

matter of law. We conclude that the time span was short enough to allow the jury to consider that an emergency existed.

With respect to the third element, it is clear from plaintiff's contentions that the element of negligence being inquired into is management and control—"the choice of action or inaction." *See* Wis J I—Civil, Part I, 1015.

It was therefore proper for the jury to have found Kiesner not negligent for it could have considered that he was confronted with an emergency, excusing his acts which might otherwise evidence a lack of ordinary care.

Plaintiffs have cited *Conery v. Tackmaier* (1967), 34 Wis. 2d 511, 149 N. W. 2d 575, as authority for the proposition that Kiesner was negligent as a matter of law, equating Kiesner's conduct in this case with defendant Tackmaier's. In that case, answering the defendant Tackmaier's contention that he was confronted with an emergency because he did not detect the presence of the children struck by his automobile until they had entered the street, the court held that his negligence as a matter of law with respect to lookout was a factor in creating the emergency situation. He knew that children customarily played in the area and a proper lookout would have revealed their presence to him when they reached the sidewalk. *Conery* is distinguished from the case at bar because here there is no basis in the record for holding Kiesner negligent as a matter of law with respect to lookout or that he negligently produced the emergency. Plaintiffs concede this by directing their argument solely to Kiesner's conduct after the invasion of his lane.

### *Admissibility of O'Brien's Statement.*

Plaintiff Lee Edeler contends that the trial court erred in admitting into evidence a statement taken from O'Brien while he was in the hospital within 72 hours of

the accident. The statement was taken by Kiesner's insurer. The statement is claimed to be admitted in violation of sec. 885.28 (1), Stats.:

"In actions for damages caused by personal injury, no statement made or writing signed by the injured person within 72 hours of the time the injury happened or accident occurred, shall be received in evidence unless such evidence would be admissible as part of the res gestae."

A similar contention was held to be without merit in *Zastrow v. Schaumburger* (1932), 210 Wis. 116, 125, 245 N. W. 202:

"It is quite obvious that the statute was particularly directed to the evils involved in the unfair practice of procuring statements, whether signed or unsigned, from an injured person after the accident happened or the injury occurred, for use in defending a suit which might thereafter be brought by the injured person against the person or corporation alleged to be liable. It was no doubt the thought of the legislature that it was unfair to procure statements from an injured person so shortly after his injury, when his physical and mental condition might be such as to prevent him from properly safeguarding his rights.

"The present action is one brought by the widow of the deceased against the defendants. The statement complained of is not one procured from the injured person in this action, the deceased, but is a statement made by a defendant. It would be clear who was 'the injured person' in this action had not a defendant also been injured; the fact that defendant Schaumburger was injured does not bring his statements within the prohibitions of the statute. We think the conversation was admissible in this action."

We think the statement was properly admitted. The wording of the statute seems to require this result; and the legislature has never expressed dissatisfaction with the *Zastrow* holding.

Defendant Kiesner has asked the court to review the refusal of the trial court to admit into evidence a statement by Lee Edeler made five days after his injury.

Review is requested under sec. 274.12 (2), Stats., since it is claimed correction of the alleged error would support the judgment appealed from. In view of the conclusion that the jury could properly find Kiesner not to be negligent, this matter need not be considered.

*By the Court.*—Judgment affirmed; order denying plaintiffs' motions after verdict affirmed; order sustaining the demurrer to the cause of action for loss of consortium reversed.

WILKIE, J. (*concurring*). This case is a dramatic example of the wholly inadequate compulsory minimum limits on motor vehicle liability insurance ($10,000 per person and $20,000 total). Plaintiff, Lee Edeler, has entered judgment against O'Brien in the amount of $50,200 (together with interest and costs). Only $10,000 of this figure (plus costs) is covered by the O'Brien policy with General Casualty Company of Wisconsin.

In 1953 the legislature increased the minimums of $5,000 per person—$10,000 per accident to the present limits. Although most of the other states have identical or even lower limits, I think it is obvious that with the reduction in the purchasing power of the dollar and the increased gravity of personal injuries received in motor vehicle accidents, higher minimums should be established. It is encouraging that the 1967 legislature, through Bill No. 1008, A., gave some consideration to this need.[1] If the very purpose of such insurance is to be served, some action in this direction must be taken by the legislature.

[1] Recommended for passage 6 to 4 by the Assembly Committee on Insurance and Banking. No further action taken in the 1967 session.