SCHWORER, Appellant, vs. EINBERGER and another, Respondents.
EINBERGER, by Guardian *ad litem,* Respondent, vs. SCHWORER and another, Appellants.
*April 11—September 12, 1939.*

211

For the appellants there were briefs by *Hougen & Brady,* attorneys, and *Frank A. Murphy* of counsel, all of Manitowoc, and oral argument by *A. L. Hougen.*

For the respondents there were briefs by *Puhr & Van de Water* of Sheboygan and *Healy & Joyce* of Manitowoc, and oral argument by *E. H. Puhr.*

The following opinion was filed June 6, 1939:

MARTIN, J. Appellants contend that the court erred in denying their motions for a directed verdict; in refusing to change the answers of the jury to certain questions, and in denying their motion for judgment in their favor in both actions; in denying their motions for a new trial in both actions; and that the court should have ordered a new trial in the interests of justice. The respondents contend that the verdict is in all respects sustained by the evidence.

From the intersection of State Trunk Highway No. 148 and County Trunk Highway J, Highway No. 148 extends in a northerly and southerly direction. The collision in question occurred about fifty feet south of said intersection, twenty-nine feet from the south line of said intersection, and on the extreme west edge of the west shoulder. From said intersection there is a town road extending in a northerly direction. Highway No. 148 is surfaced with black-top

pavement, twenty-four feet wide. There is a wide shoulder on each side, next to the black top, and there is a ditch or drain on each side immediately next to the shoulder. At the time of the accident there was a field of corn to the southeast of the intersection, so that in approaching the intersection the view to the south was obstructed until the traveler reached the west edge of the cornfield. The Schworer car came from the east and turned south at the intersection. Einberger's car was proceeding in a northerly direction, Mr. Einberger intending to continue north of the intersection on the town road to his home. Mr. Schworer was alone in his car, while Mr. Einberger was accompanied by his daughters, Marian and Irene, both deaf mutes. All the witnesses and the physical facts agree that the collision occurred on the extreme west side of Highway No. 148, twenty-nine feet south from the south boundary line of the intersection. The Schworer car, when collided with by the Einberger car, was on the extreme west edge of the west shoulder, with its right front wheel immediately next to the drain or ditch. The cars came together in a "V" formation. The Einberger car struck Schworer's car on the left side, damaging the left front wheel, the running board, and fender. There were two skid marks from the rear wheels of the Einberger car, leading back in a southeasterly direction toward the center of Highway No. 148, thirty feet long. It is conceded that as the Einberger car approached the intersection, it was straddling the center of the highway. Schworer testified that when he got past the west end of the cornfield, he then first saw the Einberger car about one hundred feet south from the intersection. Einberger testified that he did not see the Schworer car until he was within fifty feet of it. Einberger further testified that he thought the Schworer car was going to continue southwest on County Trunk Highway J. Both he and his daughters testified that as Schworer made a wide turn in the intersection and headed south, his car swung so as to partially cross the center of the highway, whereupon,

he, Einberger, swung his car to the left and applied his brakes; that Schworer then suddenly turned to his right-hand side of the highway, the west side, whereupon the collision occurred. Schworer testified that after making the turn in the intersection he proceeded south on Highway No. 148; that from the time he left the intersection until the collision occurred his car stayed to the west of the center of said highway; that as the Einberger car continued across the west half of the pavement and onto the west shoulder, he pulled his car farther to the right, bringing it to a stop at the immediate edge of the west ditch.

The jury exonerated both drivers from negligence as to speed. The jury found Einberger negligent in driving on the left side of the road. Einberger testified that the cars were within thirty-five feet of each other when he swung to the left to avoid a crash. In other words, Einberger's excuse in being on the wrong side of the highway was that he was confronted with an emergency. If that be true, he would not have been negligent in invading the left or west half of the highway. The court properly instructed the jury under the emergency rule, and, evidently, the jury did not believe that Einberger was confronted with an emergency because they found him negligent in driving on the left or west side of the highway. Upon the evidence and the conceded physical facts, and in view of the jury having been properly instructed on the emergency rule, it must be accepted as a verity in the case that Einberger was negligent in being where he had no right to be when the collision occurred. Had he yielded the west half of the highway to the Schworer car there would have been no collision.

Respondents argue that no question on emergency was submitted to the jury. True, no specific question was submitted as to whether an emergency existed. However, in view of all the circumstances, no other explanation can be made for submitting subdivision (c) of the third question

in the special verdict, which made inquiry as to whether Einberger was negligent in driving on the left side of the road. This seems obvious in view of the following statement by respondents' counsel while the court was instructing the jury, and the court's reply to counsel's statement:

"Mr. Puhr: If the court please, I take it in connection with the instructions given as to subdivision (c) of question (3) that the jury is to consider the other instruction given by the court on emergency.

"Court: The emergency is given under a general instruction and if the rule of emergency applies to either, or both, the jury knows what the rule is, I am not telling the jury as to which driver to apply the emergency rule to, I am telling the jury what the law is."

Finally, respondents' counsel argues that if the determination of the question of emergency was essential, then it must follow under sec. 270.28, Stats., that the court has determined that fact in a manner to sustain the judgment. This contention would be sound (*Lanferman v. Maryland Casualty Co.* 222 Wis. 406, 410, 267 N. W. 300) if it were not for the fact that the issue as to an emergency existing is covered by the jury's answer to subdivision (c) of question (3). Upon the uncontradicted testimony the sole issue covered by subdivision (c) of question (3) related to the question as to whether Einberger was confronted with an emergency. It was his sole reason for invading the west half of the road. We think that issue is definitely settled by the jury's finding that Einberger was negligent in driving on his left side of the road. It cannot be said in this case that that issue has been determined by the court in a manner to sustain the judgment under sec. 270.28 and the authorities cited above. It is apparent from the inquiry of respondents' counsel and the court's reply, as quoted above, that the emergency issue should be considered by the jury in answering subdivision (c) of question (3). The respondents' testimony is contradictory and very unsatisfactory. Mr. Einberger testified that

he was within fifty feet of the Schworer car when he first saw it. He was then driving his car in the center of the road, proceeding north toward the intersection. He saw the Schworer car making a wide turn in the intersection and as it started south from the intersection. In this connection he testified as follows on his direct examination:

"*Q.* When you first saw the Schworer automobile, was he making his left turn or had he made his left turn? *A.* He gave me the impression that he was going to go through, going through to the west."

"*Q.* Then in what direction, after he completed his turn, in what direction was he facing and driving, straight south or somewhat to the east or west? *A.* More to the west."

It should be noted that the collision occurred only twenty-nine feet south from the south boundary line of the intersection. It should be further noted that the skid marks made by the Einberger car commenced at the center of the highway and extended in a northwesterly direction, a distance of thirty feet. Mr. Einberger's testimony, quoted above, coupled with the conceded fact that the skid marks took off from the center of the highway, that his car skidded a distance of thirty feet with the brakes set, and that it continued to skid until it came into collision with the Schworer car which had been brought to a stop on the extreme west edge of the shoulder, is very strong corroborative evidence of Schworer's testimony that from the time he left the intersection until the collision occurred, his car had never reached the center of the highway, that his car was well to the west of the center at all times.

Marian Einberger, who was riding in the front seat with her father, testified that when she first saw the Schworer car, it was within twenty-five or thirty feet from her father's car. She testified that her father was driving on his right-hand side; that the Schworer car made a big turn in the intersection, and that in making the turn it turned to the east of the

center of the road. It will be noted that the father testified, as above indicated, that after Schworer made the turn in the intersection he proceeded south, "more to the west."

Irene Einberger testified that she was riding in the rear seat; that she first saw the Schworer car when it entered the intersection from the east; that at that time her father's car was about fifty feet south from the intersection and on the right side of the road; that the Schworer car turned the corner at a great speed and turned right onto the right side of the road, coming right for their car; that her father suddenly stopped his car, and then turned to his left. It seems highly improbable that the cars were within thirty-five or thirty feet of each other when Mr. Einberger suddenly stopped his car, and that from a standstill position Einberger's car made skid marks for a distance of thirty feet as it traveled in a northwesterly direction to the point where the collision occurred. Eliminating from the case the issue as to the existence of an emergency, which we believe must be done in view of the jury's finding that Einberger was negligent in driving on his left side or west side of the road, it would logically follow that the real cause of the collision was Einberger's invasion of Schworer's side of the highway.

In *Lardeau v. Johnson,* 203 Wis. 509, 514, 234 N. W. 710, the collision occurred as plaintiff started to turn into a yard on the left side of the highway. The court said:

"Up to the time respondent [plaintiff] started to turn appellant had no duty to anticipate that respondent was about to change his course and had the right to assume that respondent would observe what was plainly to be seen and would keep to the proper side of the highway. Appellant was under no obligation to change his speed, assuming it, as the evidence indicates, to be lawful, until the respondent had done some act which ought to have apprised appellant of his intention to cross over the highway to the north." To the same effect see *John v. Pierce,* 172 Wis. 44, 51, 178 N. W. 297; *Zastrow v. Schaumburger,* 210 Wis. 116, 122, 245 N. W. 202.

In the *Lardeau-Johnson Case, supra,* this court reversed the judgment·in favor of the plaintiff and directed judgment in favor of defendants on their counterclaim. In the instant case, if we were to assume that the two cars were approaching each other, both traveling approximately in the center of the highway at a time when they were approximately thirty-five ·feet apart, it was the duty of each driver to· turn to the right of the center of the road. It is conceded that Schworer's car turned to its right-hand side and went as far to the west as the physical condition of the road permitted. From the testimony and the physical facts it clearly appears that Einberger could have turned to his right and avoided the collision.

In passing upon motions after verdict, in the case of Marian Einberger against Schworer and his insurance carrier, in which the court entered the order as set out in the statement preceding this opinion, reducing the assessment of her damages from $3,000 to· $2,000, and giving defendants the option to choose between having the plaintiff's damages fixed at the sum of $2,000 or a new trial on the question of damages only, the trial court said:

"The plaintiff is a minor, a girl of the age of seventeen years and unfortunate in having been born deaf and dumb. She is a bright girl and quite attractive. It is not hard to conceive that because of her unfortunate condition the jury was overcome by sympathy for the girl. I do not believe that the jury was prejudiced against the defendants but they were too sympathetic toward the plaintiff."

Further the court said:

"I·am forced to the conclusion that the verdict in this case is excessive and that it would be error to let the amount stand."

In this case we have the trial court's view that the jury was too sympathetic toward the plaintiff, at least in the assessment of damages. The trial court said with reference to Marian's injuries, "they are not serious." No finding upon an issue of fact can be grounded on sympathy. If sympathy entered the jury's deliberations on the question of damages,

it is reasonable to assume that it entered into the consideration of other issues of fact which were determinative as to whether the injured party was entitled to recover at all, and might have been very determinative as to the apportionment of negligence between the two drivers.

The case presents a rather unusual situation. The collision occurred within twenty-nine feet from the south boundary of the intersection on the west edge of the west shoulder, Schworer's side of the road. Einberger makes no explanation for his car being on the west side of the road, other than the alleged emergency to which reference has been made. Upon that issue the verdict is against Einberger. If he was there because of an emergency, actual or apparent, in view of the court's instruction on the emergency rule, it seems obvious that the jury would have acquitted him of negligence in being on the left side of the road. However, the jury found him negligent in being there. Yet, the jury attributed sixty per cent of the negligence to Schworer and forty per cent to Einberger. We are of the view that the verdict is perverse under the rule in *Mauermann v. Dixon,* 217 Wis. 29, 258 N. W. 352. However, after a careful consideration of the entire record before us, we are of the opinion that justice has miscarried in these actions, and that both the judgment and order appealed from should be reversed under sec. 251.09, Stats., and a new trial granted as to all issues in both actions.

*By the Court.*—The judgment in the case of Mike Schworer, appellant, v. John Einberger and another, respondents, is reversed, and the record remanded with directions to grant a new trial. In the case of Marian Einberger, by John Einberger, guardian, respondent, v. Mike Schworer and another, appellants, the order appealed from is reversed, and the record remanded with directions to grant a new trial upon all issues.

A motion for a rehearing was denied, with $25 costs in one case, on September 12, 1939.