COHODES, Respondent, vs. MENOMINEE & MARINETTE LIGHT & TRACTION COMPANY, Appellant.

*April 3—April 23, 1912.*

*Street railways: Injury to passenger: Evidence:* Res gestæ: *Witnesses: Competency: Physicians and surgeons: Privilege: Damages: Instructions to jury: New trial: Newly discovered evidence: Appeal: Harmless errors.*

1. Where plaintiff fell and was injured in attempting to alight from a street car, questions addressed to her by the motorman after he had stopped the car and come back to her, as to why she got off while the car was going and why she didn't ring the bell, and her response thereto, were a part of the *res gestæ,* so that evidence thereof was admissible on behalf of the street railway company.

2. But the motorman and another witness having testified as to such questions and response, exclusion of the testimony of a third witness to the same effect was not prejudicial error.

3. A physician for a street railway company, who was called to attend an injured passenger and who acted as her attending physician, was incompetent under sec. 4075, Stats. (1898), to testify to information acquired while acting in that capacity, as to the nature and extent of her injuries, for the purpose of showing that such injuries were not serious and that plaintiff was endeavoring to perpetrate a fraud upon the company.

4. Although plaintiff herself testified concerning her condition and the nature and extent of her injuries, she did not thereby waive her rights under said statute.

5. The provisions of said sec. 4075, Stats. (1898), are in no way relaxed in such a case by the later legislation requiring physicians to file death certificates in a public office and to make report of certain accident cases to local registers of vital statistics.

6. An instruction upon the question of damages which stated that plaintiff was "entirely disabled" from doing her work as a boarding-house keeper, did not imply that she was so disabled continuously down to the time of the trial; but even if it did, the undisputed evidence in this case would warrant it, and hence no prejudice could have resulted.

7. To entitle a party to a new trial on the ground of newly discovered evidence, it must appear that he used due diligence to secure such evidence, that it is not merely cumulative, and that its production would probably bring about a different result; and upon this last point the trial court is best qualified to judge.

APPEAL from a judgment of the circuit court for Marinette county: S. D. HASTINGS, Circuit Judge. *Affirmed.*

On the morning of Thursday, July 8, 1909, the plaintiff was a passenger on a street car of the defendant company. She took a car near her home in Marinette and went to Menekaune to purchase fish, and took the same car to return to her home in Marinette. The car was going westerly on Hall avenue, and at South Raymond street, where the plaintiff wished to alight, she was the only passenger left in the car. In attempting to alight from the car she fell onto the street and was

injured. She was assisted to her home and an injury to her head was then dressed. On the following Wednesday she was taken to a hospital, where she remained two weeks. She was then brought home and in two weeks was again taken to the hospital, to remain for three weeks. While at the hospital the second time she underwent an operation for an injury to the womb and for an injury to the rectum, and was also operated on for appendicitis.

The plaintiff testified that prior to receiving the injuries she was a strong, healthy woman, that she kept boarders and did all the necessary work, with but slight help from her small children, but that since receiving the injuries she was unable to perform such work. Upon the question as to the cause of her falling she testified that she rang the bell to stop the car as it approached South Raymond street, that the car stopped, and that as she was stepping from the rear platform to the step in the act of alighting it started up and she was thrown to the pavement. She testified that she was bewildered, stunned, and dazed by the fall and sustained an injury to her head; that she was led home without being aware of what was occurring; that she recognized one of her daughters; that she saw the blood which came from the wound on her head; that she asked her daughter to undress and put her to bed and call a doctor; that she became entirely unconscious and remained so for ten days, and that the slight improvement which then began, gradually growing, resulted in full mental control and consciousness only after she had been operated upon.

The motorman testified that the bell was not rung for South Raymond street; that he did not stop there; that after he had gone by he happened to glance back, saw no one in the car, and then saw the plaintiff lying on the pavement; that he stopped the car, assisted the plaintiff home, returned to his car, and on his trip back to town called on the physician employed by the defendant, and that he notified the physician of

the accident.   He also testified that he asked the plaintiff, when he approached to assist her, why she did not ring the bell and why she got off the car without stopping it.

It appeared that a physician came to the home of the plaintiff shortly after she was injured and that he dressed the wound on her head, and that Dr. Redelings, the physician employed by the defendant, arrived thereafter, removed the dressing which the other physician had applied and redressed the wound, and that Dr. Redelings attended the plaintiff as physician each day until she was removed to the hospital.   The court refused to admit any of his evidence as to facts learned by him regarding the plaintiff's injuries or physical condition while he was attending her as her physician.

The court refused to admit the evidence of the witness Noonan as to questions he heard the motorman ask the plaintiff as the motorman approached to assist the plaintiff home.

This trial, which is the second trial of this case, was had in January, 1911.   The jury failed to agree in the first trial. In February, 1911, the court denied a motion for a new trial. One of the grounds upon which the motion was based was newly discovered evidence.   This alleged newly discovered evidence was that of a woman who was sitting at her window near the street crossing when the car from which plaintiff was thrown passed South Raymond street.   In effect her evidence is that the bell did not ring, that the car did not stop, and that the motorman asked the plaintiff, when he was assisting her to arise from the pavement, why she did not ring the bell and why she got off the car while it was in motion.

This is an appeal from the judgment for the sum of $3,050 as damages, and for costs.

For the appellant the cause was submitted on the brief of W. B. *Quinlan,* attorney, and F. J. *Trudell,* of counsel.

For the respondent there was a brief by *Fairchild & Goldman,* attorneys, and P. H. *Martin* and H. R. *Goldman,* of counsel, and oral argument by *Mr. Martin.*

SIEBECKER, J.   It is urged that the court erred in excluding the evidence of the witness Noonan, to the effect that he heard the motorman ask, when he approached plaintiff after she had fallen into the street, "why she got off the car before the car stopped, or while the car was going, and why she didn't ring the bell; I did not understand what she said; she attempted to say something."   This evidence is so closely connected with the transaction that it must be deemed to be the spontaneous utterances of the speakers, springing out of the transaction itself, and hence the product of the speaker's mind, prompted by the event and not the result of deliberation after the event, and therefore it was part of the *res gestæ*.   It appears, however, that the witness Annie Whelihan testified to this same conversation, stating that the motorman asked the plaintiff why she did not ring the bell and why she got off the car before it stopped, and that the plaintiff made some reply she did not understand.   The motorman, in parts of his examination, testified to the same effect.   This evidence was submitted to the jury.   Under these circumstances the ruling complained of operated in no way prejudicially to the defendant's rights, since the evidence received embraced the matter stricken out.

Dr. Redelings was the plaintiff's attending physician for about a week.   The defendant sought to elicit from him evidence tending to show that there was nothing serious about the alleged injuries, and that the plaintiff was endeavoring to perpetrate a fraud on the defendant and was malingering as to her injuries for the purpose of increasing the damages.   The inquiries propounded to the doctor for this purpose necessarily embraced information acquired by him while he was attending her in his professional capacity to enable him to prescribe for her.   He testified that he was called to attend her and that whatever information he had as to the nature and extent of her injuries had been acquired by him while attending her as her physician.   Such information is within the

provisions of sec. 4075, Stats. (1898), and cannot be disclosed over the plaintiff's objection. The cases in this court cover the points argued in this case and are decisive as to defendant's contention. *Boyle v. Northwestern Mut. R. Asso.* 95 Wis. 312, 70 N. W. 351; *Green v. Nebagamain,* 113 Wis. 508, 89 N. W. 520, and cases there cited. The contention that because plaintiff testified concerning her condition and the nature and extent of her injuries she thereby waived her rights under this statute is also negatived in the *Green Case,* which was adhered to in *In re Will of Hunt,* 122 Wis. 460, 100 N. W. 874.

It is argued that legislation requiring physicians to file death certificates in a public office and to make report of certain accident cases to local registers of vital statistics is a legislative declaration that the secrecy, as formally enjoined by the provisions of sec. 4075, Stats. (1898), has been relaxed, and that the privilege thereof, in cases like the present one, should be more restricted than formerly. We perceive no basis for this claim. There is no question before us of receiving evidence of facts embraced in any such certificate or report of Dr. Redelings. The court properly restricted the examination of the doctor upon the points involved.

The jury were instructed as follows on the question of damages:

"Then you should consider what she has lost by reason of her inability to work and earn money. It appears that she was a widow lady, keeping boarders, doing her own work entirely, and, according to the testimony, she was entirely disabled for doing that kind of work; and you will consider what would be a reasonable compensation for her loss under that head up to the present time, and for the future, as far as the testimony makes it certain that she will lose by reason of her inability or impaired ability to work and earn money in future."

It is contended that this instruction is a direction to the jury that plaintiff was entitled to damages for total disability

from doing the entire work of keeping boarders up to the time
of trial, and that the evidence as to her disability was in dis-
pute, and hence the instruction invaded the province of the
jury and determined the facts of the extent of her disability
and the time of its existence.    The language of the court is
not to be interpreted as contended by the appellant.    The
meaning naturally conveyed and intended by the court, when
applied to the facts before the jury, was that the plaintiff be-
came entirely disabled from doing her work as boarding-house
keeper.    It was not, however, stated for how long a time such
disability continued.    It is to be presumed that the jury un-
derstood the court's language in the sense in which it was
used, and that it informed the jury concerning the plaintiff's
claim to compensation in the light of the facts, namely, that
she was entitled to compensation for total disability for such
a period as the evidence showed that it had existed before the
time of trial.    The evidence justifies the court's inference of
the fact that she was for a time entirely disabled by the in-
juries complained of and was unable to do her work, hence the
instruction was not prejudicial to the defendant.    If it be as-
sumed that the instruction admits only of the interpretation
for which appellant contends, still the record fails to show
any prejudice, for it appears in effect from plaintiff's evidence
and that of the witnesses called in her behalf to testify on the
subject of her disability that she was so disabled to the time
of trial.    This evidence stands uncontradicted.    In this view
of the case no prejudice could have resulted under the appel-
lant's view of the instruction.

The court denied defendant's motion for a new trial on the
ground of newly discovered evidence and all of the evidence
in the case.    In passing on this evidence the court held that
there was nothing showing that the defendant used due dili-
gence to secure the newly discovered evidence, that such evi-
dence was merely cumulative, and that if this evidence were
produced there was no showing that the result of the trial

would probably be different. The trial court is unquestionably best qualified to judge of the effect of such evidence in connection with the evidence adduced on the trial. It is well established by the adjudications that all of these grounds must be affirmatively established by a moving party to entitle him to a new trial. An examination of the facts presented by the motion, in connection with the evidence of the case in all these respects, leads us to the conclusion that the trial court's decision is fully sustained as to each ground and that any one of them justifies his denial of a new trial.

It is argued that the evidence does not support the verdict, in that it fails to show that the accident was caused by the negligence of the motorman, and in that plaintiff's version of the transaction is so contradictory and unreliable as to render it of little if any weight, and in that the favorable verdict for the plaintiff is the result of the passion and prejudice of the jury. A recital of the facts tending to support the verdict can serve no useful purpose. A reading of the record discloses that there was ample evidence in the case to sustain the jury's findings, that the accident and the consequent injuries were proximately caused by the negligence of the motorman, and that the plaintiff suffered the injuries to which she testified. There is no basis upon which this court can hold that the verdict and the rulings of the court were against the clear preponderance of the evidence.

*By the Court.*—The judgment is affirmed.