KRESSIN, Respondent, vs. CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

*October 14, 1927—January 10, 1928.*

*Evidence: Res gestæ: Declarations of injured employee while receiving first aid: When admissible: Railroads: Unexpected movement of standing freight car: Contributory negligence: Employees standing near car.*

1. Two employees of a mill were injured by the unexpected movement of a freight car on an industrial track across the mill premises, and one of them, while in the first-aid room about twenty minutes after the time of the accident, briefly stated what had occurred. *Held,* that such statement, in view of the facts and circumstances and the ruling of the trial court admitting it in evidence, comes within the exception to the hearsay rule known as the *res gestæ* doctrine. pp. 484, 485.

2. Declarations are admissible as part of the *res gestæ* because of circumstances according credibility to them, and the time when they are made is not controlling if the circumstances giving rise to the credibility still exist. p. 485.

3. In order that an utterance may be admissible as *res gestæ* there must be some shock startling enough to produce nervous excitement and to render the utterance spontaneous, natural, impulsive, instinctive, and unreflecting, and it must be uttered while the nervous excitement, continuing without break, still dominates and the reflective powers are in abeyance, and before there has been time to contrive and misrepresent.  p. 485.

4. The determination as to whether nervous shock still dominated the injured workman, rendering his declaration respecting the circumstances of the injury admissible as *res gestæ,* is for the court, and his determination is to be treated as a verity on appeal unless manifestly wrong.  p. 486.

5. In considering the issue of contributory negligence of a manufacturer's employee, injured by a car of the defendant railroad company, the court might presume, in the absence of evidence on the subject, that the employee was prosecuting his employer's work when injured, since the burden of proving contributory negligence was on the defendant; but the deceased is *held,* in view of a custom to warn employees of the movement of cars, not guilty, as a matter of law, of contributory negligence in stopping near a standing freight car to talk to a fellow employee.  pp. 488, 489.

APPEAL from a judgment of the circuit court for Outagamie county : EDGAR V. WERNER, Circuit Judge.  *Affirmed.*

Action by *Margaret Kressin,* widow of Albert E. Kressin, deceased, against the *Chicago & Northwestern Railway Company* to recover damages for the death of said Albert E. Kressin, resulting from the alleged negligence of the defendant.  From a judgment in favor of the plaintiff the defendant appealed.

On March 12, 1925, Albert E. Kressin, plaintiff's deceased, was in the employ of Kimberly-Clark Company as millwright foreman.  He was sixty-five years of age.  Kimberly-Clark Company operated a paper plant.  The plant was served by an industrial track of the defendant company.  This industrial track is laid on a trestle over the mill-race.  It enters the mill premises from the west and terminates at a bumping post at the east end.  The track is about eight feet above the surface of the water.  It is paralleled by mill

buildings on either side. The building on the north is from twenty-five to forty feet from the north rail, the building on the south about six or eight feet from the south rail. Runways, or loading platforms, extend from the building on the north to the track, so that mill products may be carried on trucks from mill to car. The floor of the mill, the surface of the loading platform or runway, and the car floor are all on the same level. The floor of the mill on the south side of the track is on a level with the ties. The ties on the trestle at certain places between the mills are covered with planks or decking to enable employees to cross thereon between the mills. The runways leading from the mill doors on the north side of the track to the cars were designated by numbers, commencing with the westernmost number, as follows: "44," "46," "48," and "49." These platforms were also referred to as "door 44," "door 46," etc. There were two doors opening onto the track from the building on the south; the west door being referred to as "door 45," or the "boiler-house door," and the other as "door 47." A ramp or sloping platform led from the loading platform, or "door 44," east, parallel with the track, down to the level of the ties, enabling employees to go from "door 44" down the ramp, across the decking on the track, to the building on the south side, or *vice versa*. The ramp was eight feet wide at the top, narrowing gradually to a width of five feet at the foot. Its north edge at the foot was about five feet seven inches from the north rail. The decking at the foot of the ramp extended seven feet five inches north from the north rail, and extended easterly towards "door 46," the east portion of the decking being three feet six inches wide. A hand-rail extended along the north side of this decking to protect those using it from falling into the water beneath. This hand-rail extended in an easterly direction, practically parallel with the track, to the eastern extremity of the decking. At the east end of the decking, this hand-rail extended across the decking at right

angles with the track to a point about twelve to fifteen inches from the side of a car standing on the track. The rail then angled again in an easterly direction parallel with the track and joined with the west end of the loading platform at "door 46," leaving a space about fifteen inches wide between the hand-rail and the side of a box car standing on the track at that place. The corner or angle formed by this last extension is referred to in the evidence as the "offset." On the afternoon of March 11th a box car was spotted at "door 44" and another at "door 46." Sometime in the afternoon the car spotted at "door 46" moved down towards "door 44" for some unknown reason. It stopped at a point where its east end was three feet west of the "offset," and at a point where its presence blocked the free passage from the ramp on the north side to the building on the south side of the track, except the space of three feet between the east end of the car and the "offset" above described.

About 4 o'clock in the afternoon of March 12th defendant's switching crew came onto the pulp track, in accordance with the usual practice, to take out loaded cars and to set in empties. During the switching operations plaintiff's deceased was found in an upright position, squeezed between the south edge of the loading platform in front of "door 46" and the north side of the car that had been blocking the passageway. A fellow workman of Kressin by the name of Geniesse was also found lying on the ground under the car. Both men were rescued from their positions and died soon thereafter. No witness to the accident testified on the trial. It appeared, however, that Kressin was last seen about fifteen minutes before the accident, on the south side of the track, directly across from "door 46," walking along the south side of the track in a westerly direction. He did not speak to any one, nor indicate where he intended to go, nor what he was about to do. At the same time Geniesse was seen walking down the ramp from "door 44" along the

north side of the track in an easterly direction. He did not speak to any one, nor indicate what he was about to do. In the natural course of events they would have met at about the "offset." Geniesse was a workman under Kressin and frequently made reports to, and took orders from, Kressin.

The jury returned a special verdict finding that the defendant was guilty of negligence which constituted the proximate cause of the injuries. It also found that Kressin was guilty of a want of ordinary care, but that such want of ordinary care was not a proximate cause of the injuries. Upon this verdict judgment was entered in favor of the plaintiff, and the defendant appealed.

For the appellant there was a brief by *J. F. Baker* and *Llewellyn Cole,* both of Milwaukee, and oral argument by *Mr. Cole.*

For the respondent there was a brief by *Frank, Wheeler & Pelkey* of Appleton, and oral argument by *F. F. Wheeler.*

The following opinion was filed November 8, 1927:

OWEN, J. Appellant contends that the court committed error in the admission of a declaration made by the deceased Geniesse concerning the manner in which the accident happened. A witness was permitted to testify that one Geniesse was "brought into the first-aid room—as soon as they had him on the cot there—this was probably twenty minutes after the accident;" that Geniesse told him that they were standing "right at the offset in the railing, near the offset, and one rail was about fifteen inches from the cars and the other three feet from the cars; he said 'right at that corner they were standing, and the car was about three feet away, and then they bumped off the car;' he says he grabbed for Al (Kressin),—he said the car door caught him and pulled him right in." Appellant contends that this testimony was hearsay. Manifestly it was inadmissible unless, as contended by respondent, it comes within the exception of the

hearsay rule known as the *res gestæ* doctrine.    Appellant contends that the declaration was no part of the *res gestæ* because the time of the declaration was too remote from the time of the accident.    The length of time intervening between the occurrence of an accident and the making of a declaration is not necessarily and at all times controlling upon the question of whether the declaration is admissible. Declarations said to be a part of the *res gestæ* constitute an exception to the hearsay rule because of circumstances according credibility to such declarations, and, no matter when such declarations may be made, they are admissible if the circumstances giving rise to the credibility of such declarations still exist.

In discussing the subject of *res gestæ,* it is said in 3 Wigmore on Evidence (1st ed.), at sec. 1746, that "the typical case presented is a statement or exclamation, by an injured person, immediately after the injury, declaring the circumstances of the injury, or by a person present at an affray, a railroad collision, or other exciting occasion, asserting the circumstances of it as observed by him."    And in sec. 1749: "The utterance, it is commonly said, must be 'spontaneous,' 'natural,' 'impulsive,' 'instinctive,' 'generated by an excited feeling which extends without let or breakdown from the moment of the event they illustrate.'"    And in sec. 1750: "There must be some shock, startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting. . . . The utterance must have been before there has been time to contrive and misrepresent, *i. e.* while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance."    The decisions of this court upon the subject are in harmony with this statement of the principle upon which the doctrine of *res gestæ* is based.    *Johnson v. State,* 129 Wis. 146, 108 N. W. 55; *Andrzejewski v. Northwestern Fuel Co.* 158 Wis. 170, 148 N. W. 37; *Shiefel v. State,* 180 Wis. 186, 192 N. W. 386.

Whether this nervous shock still dominated the senses at the time of the making of the declaration in this case is a question going to the competency of the evidence to be determined by the court, the decision of which is to be treated on appeal as a verity, unless manifestly wrong. *Johnson v. State,* 129 Wis. 146, 108 N. W. 55. Geniesse died as a result of his injuries—just how long after the accident does not appear. That he received a severe nervous shock cannot be doubted. That he was suffering from such shock at the time of the declaration seems quite certain. There is no reason to believe that his declaration was the result of premeditation, or artifice, or with a view to the consequences. In view of the determination of the trial court upon the admissibility of the evidence, the circumstances are not such as to justify our declaring it inadmissible.

The jury found that the deceased, Kressin, failed "to exercise that degree of care usually or ordinarily exercised by persons of ordinary care and prudence, or the great majority of people engaged in and employed under the same or similar circumstances." But they further found that such failure was not a proximate cause of the injuries sustained by the deceased. It is contended by the appellant that it appears as a matter of law that such failure on the part of the deceased did constitute a proximate cause of his injuries. If the jury was warranted in finding the deceased guilty of contributory negligence, we can see no escape from the conclusion that his injury was the proximate result of such negligence. Whether the jury was justified in finding contributory negligence on the part of the deceased, however, is worthy of consideration.

The last seen of Kressin was about fifteen minutes prior to the accident, at which time he was apparently going from the south to the north side of the track. The last seen of Geniesse was at about the same time, and he was apparently going from the north to the south side of the track. It is

apparent that they met each other on the way, and the inference is reasonable that they stopped to talk somewhere in the vicinity of this freight car, because when the car moved they were both injured in much the same manner. In view of the fact that Geniesse frequently made reports to and took orders from Kressin, it is reasonable to suppose that they met each other on their way across the track and stopped to talk. If the deceased was guilty of negligence, it must have been because he stopped and stood in such close proximity to the freight car that when it started it wedged him in between the car and the hand-rail or loading platform. The evidence in the case establishes the fact that the custom prevailed of giving warning before cars on this track were moved by the switching crew. It would not be argued that ordinary care on the part of those loading the car with the product of the mill would require them to be on a constant lookout as to unexpected movements of the car. Had the deceased been in the car loading it and the car had been suddenly moved, as it was, throwing him down and causing him injuries, it would not be contended that he was guilty of a want of ordinary care. The statement is made in *Bain v. Northern Pac. R. Co.* 120 Wis. 412, 98 N. W. 241, "that it cannot be held negligence in law to take a position in such proximity to a stationary and detached freight car that, if it is set in motion without notice, injury is probable, when one has no knowledge of any custom to move it without warning. Such a car presents nothing of peril in its then condition. It is as harmless as a farm wagon, or, indeed, as a building, *per se."* In that case the plaintiff was laying a brick wall in close proximity to a railroad track. While so engaged, a freight car came along without warning and rolled him between the car and the wall, much as the deceased in this case was rolled between the box car and the hand-rail or platform. The trial court directed a verdict in favor of the defendant on the ground that the plaintiff was guilty of contributory negli-

gence as a matter of law.  This court said that if "the situation imposed a duty of warning upon the master, the workman may well without negligence assume that such duty will be performed, unless he has knowledge of absence of such regulation or of a different custom."  Because the record contained no direct evidence with reference to this custom, the case was sent back for a new trial.  However, the case seems to hold that unless it was the custom to move such cars without giving warning, and that the plaintiff knew of such custom, there was no ground upon which to hold the plaintiff guilty of contributory negligence.  While some of the language in the opinion is sufficiently broad to apply to any one taking a position in close proximity to a freight car, whether in the performance of his duty or to gratify curiosity or to idle away his time, nevertheless it was said with reference to employees whose duties required them to occupy such a position, and the cases cited in support of the doctrine are cases in which workmen were injured by the sudden movement of a car while performing duties requiring them to be in a position dangerous if the car be moved without warning.

The duties of Kressin did not require him to be in or about the car, but they did require him to be about his master's premises.  Freight cars were constantly on this track.  They were a part of the premises upon which Kressin was required to work.  It was not dangerous to be around these cars in view of the custom of giving warning prior to their movement.  Kressin met Geniesse in the vicinity of this car.  They apparently stopped to talk.  It appears that there was necessity for occasional conference between them in the prosecution of their master's work.  They were on their master's premises during working hours, apparently engaged in conversation of some sort.  If they were engaged in conversation concerning the master's business, then they were in the pursuit of their duties.  If this be material, it will so be assumed, as the burden rests upon the defendant of proving contributory negligence, and proof is lacking as to the subject of their

Tewes v. Industrial Comm. 194 Wis. 489.

conversation. The presumption, therefore, will obtain, in view of all the other circumstances, that they were prosecuting their master's work. They were standing beside an inert freight car. It was not a place of danger, unless the car be moved without warning. It was an established custom not to move the freight car without warning. This custom was for the protection of all working in or about the premises. The deceased was as much entitled to this warning as employees working within the car itself. In view of this custom, their position was no more dangerous than if they had been working in the car. We hold, therefore, that the case falls within the doctrine of *Bain v. Northern Pac. R. Co., supra,* and that there was no support for the finding of the jury that the deceased was guilty of contributory negligence.

This conclusion dispenses with the necessity of considering the question of proximate cause, in response to appellant's challenge of this part of the special verdict.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on January 10, 1928.