POCQUETTE, Respondent, vs. CARPIAUX and another, Appellants.

*March 5—April 8, 1952.*

For the appellants there were briefs by *Puhr, Peters & Holden* of Sheboygan, and *John Duffy* of Green Bay, and oral argument by *John R. Holden.*

For the respondent there was a brief by *Kaftan, Kaftan & Kaftan* of Green Bay, and oral argument by *Fred F. Kaftan.*

BROWN, J. For purposes of the opinion the defendants Carpiaux and his insurance carrier will be treated as one party. The jury found that defendant's negligence was eighty per cent and plaintiff's negligence was twenty per cent of the cause of the collision and the trial court granted judgment for plaintiff upon the verdict. This must be reversed because of prejudicial error in the admission of evidence on the vital question of whether plaintiff brought his automobile to a stop before entering the arterial street upon which defendant was driving. The jury found that plaintiff had stopped.

Plaintiff and the passenger in his automobile testified that he came to a complete stop before driving into the arterial. Defendant and his passengers, who observed plaintiff approach the intersection, testified that he failed to stop. Two disinterested eyewitnesses testified that plaintiff did not stop and one of them also swore that before plaintiff left the scene of the accident the plaintiff admitted to him that he had failed

to stop. On rebuttal plaintiff called the policeman who investigated the accident and the following examination took place:

"Q.  Now, after the accident happened did you talk to Mr. Pocquette about how it happened?  A.  At the hospital.

"Q.  At the hospital?  A.  We always take the injured and get them up to the hospital as soon as possible.

"Q.  Now, what did you talk about?  A.  I asked him what his speed was and what took place over there.

"Q.  What did he say?

"Mr. Holden: I object to that—

"Court: Wait a minute. How long after the accident was this?

"Witness: Maybe an hour.

"Court: Objection overruled. Admit the evidence as part of the *res gestae*.

"Q.  What did he say?  A.  I asked him what took place over there and he said as he approached the intersection he stopped at the stop sign.

"Q.  He told you he stopped at the stop sign?  A.  He told me he stopped at the stop sign. That's the first question I asked him: 'Do you know if it was an arterial intersection?'

"Q.  And he said he had stopped?  A.  He told me he had stopped.

"Q.  How long was that after he had left the scene of the accident, do you know?  A.  I would say almost an hour."

The learned trial court erred in admitting plaintiff's statement to the policeman as part of the *res gestae*. To be such part, and, therefore, admissible as proof of the fact which it purports to prove, the statement must be made spontaneously, without premeditation or opportunity for the speaker to consider the effect of his words. In *Kressin v. Chicago & N. W. R. Co.* (1928), 194 Wis. 480, 485, 215 N. W. 908, we said:

"In discussing the subject of *res gestae,* it is said in 3 Wigmore on Evidence (1st ed.), at sec. 1746, that 'the typical case presented is a statement or exclamation, by an injured

person, immediately after the injury, declaring the circumstances of the injury, or by a person present at an affray, a railroad collision, or other exciting occasion, asserting the circumstances of it as observed by him.' And in sec. 1749: 'The utterance, it is commonly said, must be "spontaneous," "natural," "impulsive," "instinctive," "generated by an excited feeling which extends without let or breakdown from the moment of the event they illustrate." ' And in sec. 1750: 'There must be some shock, startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting. . . . The utterance must have been before there has been time to contrive and misrepresent, *i. e.* while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance.' The decisions of this court upon the subject are in harmony with this statement of the principle upon which the doctrine of *res gestae* is based. . . ."

Pocquette testified that after the accident he was helped to his feet, walked over to the car and stood around, showed a policeman his driver's license and noted the position of the cars. Then he fell and was taken to the hospital where an X ray showed he had a broken hip. He was able to diagram the positions of the automobiles after the collision and his position where he lay in the street. His testimony is conclusive that his mental and nervous condition was such that his words and actions were not merely instinctive and impulsive, and when he was interviewed at the hospital he had had both the opportunity and the capacity to review the accident and to calculate the effect of any statement which he might give concerning it. His own brief does not contend that his statement to the policeman at the hospital was admissible as *res gestae*.

Plaintiff now submits that the statement was a prior one consistent with his testimony on the witness stand and admissible to rebut the claim by the defendant that plaintiff's testimony of stopping his car was a recent fabrication. There are three obstacles to this contention: First, the record does not

show any charge or accusation by defendant that plaintiff had recently fabricated this evidence or contention; second, the record does not show that the policeman's testimony was offered to rebut such a charge and it does show that the evidence was admitted for a different purpose; and third, the testimony would not have been admissible for such rebuttal anyway. Plaintiff relies on *J. F. Rappel Co. v. Manitowoc* (1923), 182 Wis. 141, 195 N. W. 399. In that action the plaintiff sought damages because his basement was flooded. He testified that very shortly after the flood he discovered a hole in the sewer pipe. Defendant's employees testified that the hole was not there until five or six weeks later when they, themselves, made it in the course of an inspection. Defendant then charged that plaintiff, discovering the hole, fabricated the story that it was there right after the flood. To rebut the claim of fabrication plaintiff had a witness testify that on a date earlier than that on which defendant alleged its own employees had made the hole, plaintiff informed the witness that the hole existed and drew a sketch showing its location. (Taken from the "printed case" in the appeal and less fully stated in the opinion.) We held such evidence was admissible, saying (p. 147):

"The trial court received the testimony of the plaintiff's witness, not to prove the existence or nonexistence of the hole but to rebut the claim made by the defendant that the testimony given by the plaintiff's witnesses upon that point was a recent fabrication. Both upon reason and authority this testimony was properly received."

In the present case we search the record without finding that defendant claimed that plaintiff's testimony that he stopped at the arterial was a recent fabrication and that plaintiff offered evidence of his prior statements to rebut that claim. It appears without contradiction that the court received the evidence as part of the *res gestae,* that is as proof of the fact of stopping the automobile and permitted the jury

so to consider it and not as evidence merely going to the question of plaintiff's veracity. The circumstances of the offer and admission of the testimony is the reverse of that in the *Rappel Case, supra,* and the latter is not a precedent for its admissibility here.

Even in the absence of the first two difficulties the evidence does not qualify for admission under the "recent fabrication" rule.

*"Limitations on rule.* There are certain recognized limitations on the admissibility of consistent statements of a witness who is impeached by charges of recent fabrication. It must appear that the statements sought to be introduced are consistent with those made by the witness under oath, that they were made soon after the transaction to which they relate and at a time when the motive to fabricate did not exist, and that they contain such fact or facts pertinent to the issues involved as reasonably furnish some test of the witness' integrity and accuracy of recollection. The mere fact that the declarations of a witness offered to corroborate his testimony were made shortly after the occurrence and long before the testimony is given upon the trial does not of itself afford any reason for inferring that the testimony upon the trial is correct. On the other hand, the fact that the statements were so near in point of time to the beginning of the action that they cannot rationally be dissociated from the action tend rather to confirm than refute the charge of fabrication.

"Regardless of the time when the consistent statements of the witness were made in relation to the impeaching circumstances or contradictory statements, the evidence sought to be introduced has been excluded in many instances because it plainly appeared that the witness occupied the same relation to the cause or had the same motive in speaking that governed him when testifying." 58 Am. Jur., Witnesses, p. 465, sec. 829.

We do not mean to infer that the plaintiff was untruthful either at the hospital or on the witness stand, his credibility being the jury's concern rather than ours; but we point out that he was in possession of his faculties when he talked to

the policeman at the hospital, the investigation in part was to determine whether he had run an arterial, thereby violating the law, and he would naturally and inevitably be aware that a civil action, either by him or against him, could grow out of the accident. The motives which governed him when testifying were present when he was answering the officer's questions at the hospital and his replies cannot be taken as unconsidered, consistent statements made at a time when their usefulness to his claim or to his defense was unforeseen and unappreciated. Hence, they do not qualify for admission in evidence to rebut an accusation that his story on the stand was a recent fabrication even if the proper foundation had been laid for the admission of evidence for that purpose. As repeated by the policeman they fall merely within the rule excluding hearsay testimony.

In our opinion the officer's testimony concerning what the plaintiff told him at the hospital was incompetent, it was admitted as proof of a fact very material to plaintiff's case, particularly on the issue of comparative negligence, and the jury found in accordance with the officer's testimony and against that of disinterested eyewitnesses. The error is clearly prejudicial and thus reversible. Other assignments of error need not be considered.

*By the Court.*—Judgment reversed and cause remanded with directions to grant a new trial.