STATE, Respondent, v. SMITH, Appellant.

*October 6—October 31, 1967.*

586

For the appellant there was a brief by *Kersten & McKinnon,* attorneys, and *George P. Kersten* of counsel, all of Milwaukee, and oral argument by *Kenan J. Kersten.*

For the respondent the cause was argued by *E. Michael McCann,* assistant district attorney of Milwaukee county, with whom on the brief were *Bronson C. La Follette,* attorney general, and *Hugh R. O'Connell,* district attorney.

HEFFERNAN, J.

"Who finds the heifer dead and bleeding fresh,
And sees fast by a butcher with an axe,
But will suspect 'twas he that made the slaughter?"

Shakespeare, Henry VI, Pt. II, III 2.

*Sufficiency of the evidence.*

Defendant contends that the verdict and conviction should be set aside because of insufficiency of the evidence. This argument is primarily addressed to the fact that no witness testified that he saw Smith actually commit the crime of burglarizing the antique shop. In short, as stated by Mr. Justice HALLOWS in *State v. Johnson* (1960), 11 Wis. 2d 130, 134, 104 N. W. 2d 379, he was not "caught in the act like a child with his hand in the cooky jar." He was convicted in part at least upon circumstantial evidence, rather than upon the testimonial evidence of a person who saw him break the window and remove the two boxes from the antique shop. In *Schwantes v. State* (1906), 127 Wis. 160, 176,

106 N. W. 237, Mr. Justice MARSHALL, speaking for the court, stated:

". . . circumstantial evidence must be sufficiently strong to exclude every reasonable theory of innocence, and that is likewise true of direct evidence. There should be no distrust thrown on the former even in regard to proof of the essential elements of the *corpus delicti*. If the punishment of criminal offenses were to wait upon the production of direct evidence of the body of the crime, or any other element necessary to conviction, there would be immunity in that regard in perhaps the majority of the most serious cases of criminal homicide and other most heinous offenses. In no other way can society be efficiently protected, wrongs redressed, and rights protected than to abide by what has been said."

However, there need be no apology for the probative value of circumstantial evidence. *Schwantes v. State, supra,* and *Spick v. State* (1909), 140 Wis. 104, 121 N. W. 664, both point out that circumstantial evidence may be, and often is, stronger and more convincing than testimonial evidence. 1 Wigmore, *Evidence* (3d ed.), p. 404, sec. 26, cites the statement of Chief Justice SHAW appearing in *Commonwealth v. Webster,* 5 Cushing 295, 311:

"Circumstantial evidence, therefore, is founded on experience and observed facts and coincidences, establishing a connection between the known and proved facts and the fact sought to be proved. The advantages are, that, as the evidence commonly comes from several witnesses and different sources, a chain of circumstances is less likely to be falsely prepared and arranged, and falsehood and perjury are more likely to be detected and fail of their purpose."

It is clear that a finding of guilt can rest upon evidence which is entirely circumstantial. *Hemmis v. State* (1964), 24 Wis. 2d 346, 129 N. W. 2d 209; *Oseman v. State* (1966), 32 Wis. 2d 523, 145 N. W. 2d 766.

The test of sufficiency of the evidence in a criminal case is the same whether the proof be by evidence that

is circumstantial or testimonial. The burden is upon the state in all cases to prove the defendant guilty beyond a reasonable doubt. *Gauthier v. State* (1965), 28 Wis. 2d 412, 137 N. W. 2d 101, certiorari denied, 383 U. S. 916, 86 Sup. Ct. 910, 15 L. Ed. 2d 671. The test upon appeal is not whether the evidence if presented to this court would be sufficient to convince us of the defendant's guilt beyond a reasonable doubt, but whether the evidence adduced, believed, and rationally considered was sufficient for the jury to make such a finding. *Gauthier, supra,* page 416.

The standard to be used when appraising the sufficiency of circumstantial evidence is identical in that each of the several circumstances relied upon must be proved beyond a reasonable doubt, and these circumstances must not only point with moral certainty to the guilt of the defendant, but must exclude every reasonable hypothesis of innocence. See *State v. Johnson* (1960), 11 Wis. 2d 130, 136, 104 N. W. 2d 379.

Applying those standards to the facts at hand it is clear that the evidence is sufficient to permit the jury to find the defendant guilty beyond a reasonable doubt. It is undisputed that the window was broken and certain objects taken from the antique shop. There was without doubt a burglarious entry. The Barnes' were awakened by the noise of that entry, and only a very few minutes later Barnes observed a man in a light-colored coat and dark hat of husky build "moving around" directly in front of the forced window. He was observed by Barnes for six minutes and continuously until the police arrived at the scene. Barnes then identified the defendant as the man he saw in the gangway or alley. It is undisputed that Smith was first observed by the police in the gangway at a point approximately the location of the window to the antique shop. When asked to stop he did not do so immediately, and when asked to explain his presence he gave the incredible statement that he was

taking a shortcut home, when the facts showed that the Barnes place was not on the route of a shortcut, but was out of the way. The jury was the sole judge of the defendant's credibility; and these discrepancies, plus the voluntary admission of the defendant on the stand that he was on parole, might well have contributed to the jury's doubt of the truth of the defendant's veracity. They could well have concluded that his entire explanation was a falsehood.

The circumstantial evidence taken as a whole—the fact that he was positively identified by Barnes as at the scene of the crime for a period of several minutes and engaged in some activity near the window immediately following the noise that resulted from the entry through the window, coupled with explanations the falsehood of which undermines the defendant's credibility—establishes circumstances that are wholly incompatible with any reasonable hypothesis of innocence. We are satisfied that the evidence adduced, believed, and rationally considered by the jury was sufficient to prove the defendant guilty beyond a reasonable doubt. We concur with the trial judge when he stated the verdict, "clearly conforms with the overwhelming evidence."

*Was an admission by a police officer improperly excluded to the prejudice of the defendant?*

At the trial in response to a question by his own counsel, Smith stated:

"*A.* Well, the two officers that arrested me, they told me, 'well, you know you broke in this place,' and I said 'no, I didn't,' and a few minutes later another police officer came down there and looked around for fingerprints, that's what I was told. But I don't know whether they found any or not, I haven't seen any. And I heard one of the police officers state that the person who broke into the place must have got cut, or something.

"*Mr. McCann:* I will object to this as hearsay."

The state's objection on grounds of hearsay was sustained. Defendant now contends that the statement should have been admissible as an admission. It is argued that the statement has probative value because Smith was not cut, and hence the admission would exclude him as a suspect. His argument is that the policeman who allegedly made the admission is an agent of the state, the party adversary to the defendant in this action. We find his argument deficient in several respects. We cannot in the absence of some factual underpinning, which the defendant has not attempted to furnish, conclude as a matter of law that a municipal police officer is the agent of the state in its adversary capacity as a party in criminal prosecution. Moreover, under the interpretation placed upon the admission rule by this court, the statement is not permitted in evidence. We have held in *Rudzinski v. Warner Theatres* (1962), 16 Wis. 2d 241, 114 N. W. 2d 466, and *Grunwald v. Halron* (1967), 33 Wis. 2d 433, 147 N. W. 2d 543, that for an agent's statement to be admissible against his principal it must have been spoken within the scope of his authority to speak for the principal. There is no evidence of any authority for the police officer to speak for his principal, and in fact, as pointed out above, we cannot conclude on the basis of the record that an agency relationship existed. We cannot therefore conclude that the statement should have been admitted as an admission of an agent.

The defendant also argues that the statement was admissible as part of the *res gestae*. We agree. In *Rudzinski, supra,* page 247, we stated our acceptance of the principles embodied in Rule 512 of the American Law Institute Model Code of Evidence, and concluded that it properly stated the law of Wisconsin with regard to statements admissible under the concept of *res gestae*. Rule 512 states (p. 262) :

"Evidence of a hearsay statement is admissible if the judge finds that the hearsay statement was made (a) while the declarant was perceiving the event or condition which the statement narrates or describes or explains, or immediately thereafter; or (b) while the declarant was under the stress of a nervous excitement caused by his perception of the event or condition which the statement narrates or describes or explains."

It is apparent that exception to the hearsay rule that the defendant urges is not the "excited utterance" described in (b); rather, it is the hearsay statement made contemporaneously, or nearly contemporaneously, with the observation of an event or condition.

We conclude that the statement of the police officer was admissible under (a). The statement of the officer while examining the broken window falls within the first section of the American Law Institute Rule. The trustworthiness of such hearsay statements is explained by McCormick in his treatise on Evidence (hornbook series), p. 584, sec. 273:

"Another brilliant generalization by Morgan has led to an advance in clear thinking about statements accompanying non-startling events or relating to a condition which the declarant is observing. Such statements though unexcited usually possess a high degree of trustworthiness. If a person observes some situation or happening which is not at all startling or shocking in its nature, nor actually producing excitement in the observer, the observer may yet have occasion to comment on what he sees (or learns from other senses) *at the very time that he is receiving the impression*. Such a comment, as to a situation then before the declarant, does not have the safeguard of impulse, emotion, or excitement, but as Morgan points out there are other safeguards. In the first place, the report at the moment of the thing then seen, heard, etc., is safe from any error from defect of *memory* of the declarant. Secondly, there is little or no *time* for calculated misstatement, and thirdly, the statement will usually be made to another (the witness who

reports it) who would have equal opportunities to observe and hence to check a misstatement."

We thus conclude that it would not have been error for the trial judge to admit the hearsay statement of the police officer. [1]

However, this court recognizes that a trial court is vested with a broad discretion in determining whether to admit utterances as part of the *res gestae*. *State v. Dunn* (1960), 10 Wis. 2d 447, 457, 103 N. W. 2d 36; *Kressin v. Chicago & N. W. R. R.* (1928), 194 Wis. 480, 486, 215 N. W. 908; *Johnson v. State* (1906), 129

---

[1] It should be noted that the statement of the police officer is more than a mere statement of his observation. Implicit in his statement is the fact of his examining the window and finding the glass broken. In addition, he expresses an opinion that whoever broke into the antique shop must have been cut. Since we conclude it was not error for the trial judge to exclude the statement we do not feel constrained to determine whether the opinion rule is applicable to hearsay statements that are otherwise admissible as exceptions to the rule. It is the opinion of *McCormick, supra,* p. 38, sec. 18, that the opinion rule is not applicable.

"Does the opinion rule apply to statements made out of court, and offered in court under some exception to the hearsay rule? The question has received little consideration by the textwriters and by the courts. If we accept the traditional view that the opinion rule is a categorical rule of exclusion, rejecting a certain clearly definable type of evidence, it is natural to assume that if this kind of evidence is excluded when elicited from a witness on the stand, it should also be rejected when offered in the form of the repetition in court of what some narrator has said out of court. Consequently, most of the decisions simply discuss the admissibility of opinions contained in hearsay declarations as if they had been given by a witness on the stand, and reject or admit them accordingly, although common sense doubtless has an unspoken influence toward a more liberal treatment of the out-of-court opinions. If on the other hand we adopt the view to which the courts seem now to be tending, namely, that the opinion rule is not an absolute rule of exclusion, but rather a relative rule for the examination of witnesses, preferring when it is feasible the more concrete form of examination to the more general and inferential, then it becomes obvious that it has no sensible application to statements

Wis. 146, 152, 108 N. W. 55; *Rudzinski v. Warner Theatres* (1962), 16 Wis. 2d 241, 114 N. W. 2d 466.

The usual question for the trial judge to determine in this respect is whether the statement was, in terms of time, so related to an exciting event as to be trustworthy. 6 Wigmore, *Evidence* (3d ed.), p. 135, sec. 1747; 31A C. J. S., *Evidence*, p. 982, sec. 403 (1) ; *Rudzinski, supra*, page 247. However, similar discretion should be vested in the trial judge when determining the admissibility of a *res gestae* statement not uttered as the consequence of an exciting event, but as an unexcited declaration of a present sense impression. Though otherwise admissible, it is within the discretion of the trial court to exclude such evidence if the circumstances surrounding the utterance are indicative of factors that may result in lack of trustworthiness or if the hearsay statement otherwise admissible is of such low probative value that it would not aid a judge or jury in the quest for the truth.[2] We

made out of court. Sustaining an objection to counsel's question to a witness as calling for an 'opinion' is usually not a serious matter since counsel can in most cases easily reframe the question to call for the more concrete statement. But to reject the statement of the out-of-court narrator of what he observed, made in a dying declaration, for example, on the ground that it is too general in form to meet the courtroom rules of interrogation mistakes the function of the opinion rule and may shut out altogether a valuable item of proof. Some of the cases, and Mr. Wigmore, have taken this view as to admissions, and it is believed that it will prevail as to the other classes of declarations coming in under exceptions to the hearsay rule."

[2] The American Law Institute Model Code of Evidence, p. 180, proposes the following rule for dealing with evidence with comparatively slight probative value:

"Rule 303 DISCRETION OF JUDGE TO EXCLUDE ADMISSIBLE EVIDENCE.

"(1) The judge may in his discretion exclude evidence if he finds that its probative value is outweighed by the risk that its admission will (a) necessitate undue consumption of time, or (b) create substantial danger of undue prejudice or of confusing the issues or of misleading the jury, or (c) unfairly surprise a party

conclude that the statement was properly excluded for the latter reason. The opinion of the declarant that "the person who broke into the place must have got cut" does not square with the fact that there was no evidence of blood at the scene or with common knowledge that a person does not necessarily get cut when a window is broken. He does not have to break it with his hands, and in the instant case there was evidence that the defendant was wearing gloves and a long trench coat. Moreover, the police officer was not identified. In view of the known circumstances of the incident, the hearsay statement was of such low probative value as to be almost valueless to a fact finder and likely to lead to jury confusion and the devotion of an undue amout of time and testimony to an issue of relatively minor importance. Under the circumstances it was not an abuse of discretion to exclude the statement.

*By the Court.*—Judgment affirmed.

who has not had reasonable ground to anticipate that such evidence would be offered."

In the comments to the Rule, the reporter suggests, at page 182:

"The application of this Rule should depend so completely upon the circumstances of the particular case and be so entirely in the discretion of the trial judge that a decision in one case should not be used as a precedent in another."

Rule 45, p. 624, of the Proposed Uniform Evidence Acts follows a similar rationale for the exclusion of evidence of low probative value (9A Uniform Laws Annotated).