COSSETTE, Respondent, v. LEPP, Executor, Appellant.

*February 26—April 9, 1968.*

For the appellant there was a brief by *Heide, Sheldon, Hartley & Thom* of Kenosha, and oral argument by *W. A. Sheldon.*

For the respondent there was a brief by *Phillips & Richards* of Kenosha, and oral argument by *Charles J. Richards.*

WILKIE, J. Two issues are raised on this appeal:

1. Did the trial court err in admitting into evidence the testimony of witnesses concerning declarations made by the deceased?

2. Is there any credible evidence to support the jury finding that the defendant was causally negligent?

### *Declarations of Decedent.*

Two witnesses testified over objection that Raymond Cossette told them that he "tripped and fell" down the stairs. A third witness testified that the deceased said he "fell."

Vite stated that when he found Cossette slumped on the stairs he asked what had happened and Cossette replied that he "tripped and fell." The plaintiff, Robert Cossette, also testified that his father later, while at the hospital, said he tripped and fell on the stairs. Dr. Bilak testified that the deceased told him at the hospital and during his initial examination that he (Cossette) fell.

Because Raymond Cossette was dead at the time of trial, the testimony regarding his statements was the only evidence available to establish the fact that he had tripped and fallen on the stairs. The trial court ruled that this testimony, though it was hearsay, was admissible into evidence as an exception to the hearsay rule under the doctrine of *res gestae*.

All parties agree that the three reports of what was declared by the decedent on each of the three occasions are hearsay and inadmissible in each instance for the purpose of proving the event unless the particular declaration comes within the well-established exception to the hearsay rule as part of the *"res gestae."*

In *Rudzinski v. Warner Theatres*,[1] this court held that the Wisconsin law on the *res gestae* was stated by Rule 512 of the American Law Institute Model Code of Evidence, which provides:

"Evidence of a hearsay statement is admissible if the judge finds that the hearsay statement was made
"(a) while the declarant was perceiving the event or condition which the statement narrates or describes or explains, or immediately thereafter; or
"(b) while the declarant was under the stress of a nervous excitement caused by his perception of the event or condition which the statement narrates or describes or explains."[2]

---

[1] (1962), 16 Wis. 2d 241, 114 N. W. 2d 466.

[2] Affirmed in *State v. Smith* (1967), 36 Wis. 2d 584, 153 N. W. 2d 538.

The court observed that the Wisconsin rule had been stated in similar terms in *Krasno v. Brace* [3] thusly:

". . . It is generally held that to be part of the *res gestae* the declaration must be contemporaneous with the act or transaction. In some cases spontaneity of the declaration is considered a substitute for the time element."

There is no evidence as to when the senior Cossette fell. When he first spoke to Mr. Vite no one knows whether it was ten minutes or six hours after the fall. Thus his statement to Vite is not an utterance contemporaneous with the happening of the event and is not admissible under the exception stated by Rule 512 (a).

However, we deem that as to the initial declaration to Vite, Vite's testimony thereof was admissible under the exception stated by Rule 512 (b). It is undisputed that Cossette was seriously injured when he was found. The injury produced paraplegia. Under the circumstances, it would not be unreasonable to conclude, as the trial court did, that Cossette was under the stress of nervous excitement when he made his statement to Vite, the first person to come to his aid. Cossette at that time, a sufferer from extreme asthma, could well have been in fear of his life. Cossette's reply that he "tripped and fell" was made to the most natural question any person would ask under the circumstance, namely, "What happened to you?" Wigmore, while discussing this exact point expresses the view that when such a statement is made "in the stress of nervous excitement the reflective faculties may be stilled and the utterance may become the unreflecting and sincere expression of one's actual impressions and belief." [4] He concludes that "special trustworthiness" must be attributed to the statement "to justify us in ex-

---

[3] (1951), 259 Wis. 12, 15, 47 N. W. 2d 314.

[4] 6 Wigmore, *Evidence* (3d ed.), p. 139, sec. 1749.

empting it from the ordinary test of cross-examination on the stand." [5]

However, it is not because the trial judge believes in some subjective way that the statement is trustworthy but because the special circumstances in which the statement is made make it reliable and trustworthy. The trial court has wide discretion in determining whether to admit utterances as part of the *res gestae* and his ruling will be affirmed unless a clear abuse of discretion is shown.[6] Here, we find no abuse of discretion by the trial court in admitting the statement as part of the *res gestae* although the trial court stressed the innate trustworthiness of the statement more than the objective circumstances making it trustworthy. Rule 512 (a) and (b) state carefully worded ground rules to apply in determining whether statements are made under circumstances that will lead the court to the conclusion that they are trustworthy. They detail circumstances under which statements are made at a time or under circumstances when the declarant is not likely to have reflected on the event he reports or to have conjured up some untrue version of that event.

Although we conclude that the testimony of Vite concerning the statement to him by Cossette was properly admitted as part of the *res gestae,* the testimony of the doctor and Cossette's son about the statements to them by the decedent at a later time at the hospital were not so admissible.

The doctor's testimony that Cossette's statement to him was part of the history given to the treating doctor is

---

[5] *Id.*

[6] *State v. Dunn* (1960), 10 Wis. 2d 447, 457, 103 N. W. 2d 36; *Kressin v. Chicago & N. W. Ry.* (1928), 194 Wis. 480, 486, 215 N. W. 908; *Johnson v. State* (1906), 129 Wis. 146, 152, 108 N. W. 55; *Rudzinski, supra,* footnote 1, at page 248; *Smith, supra,* footnote 2, at page 595.

admissible on that basis,[7] but not for the purpose of proving the fact that Cossette "tripped and fell."

Thus, we conclude there was error in allowing in the testimony concerning the third statement to the son. But, since this statement was merely cumulative of the others, such error was not prejudicial.

### Sufficiency of the Evidence.

This case was tried to a court and jury; therefore, the verdict must be sustained if there is any credible evidence which under any reasonable view supports that verdict.[8]

The stairway upon which the accident occurred included seven steps and had no handrails. The regulations of the department of industry, labor & human relations require that stairways on the outside of buildings, which are an integral part thereof, have handrails on each side if they have more than three risers.[9] The violation of a safety order is negligence as a matter of law and constitutes a violation of the safe-place statutes.[10]

In *Umnus v. Wisconsin Public Service Corp.*[11] this court discussed the matter of causation when violations of safety statutes are involved by saying:

". . . our decisions, and those of other jurisdictions over the years, demonstrate that when one owing a duty

---

[7] *Ritter v. Coca-Cola Co.* (1964), 24 Wis. 2d 157, 164, 128 N. W. 2d 439.

[8] *Nieman v. American Family Mut. Ins. Co.*, ante, p. 62, 155 N. W. 2d 809.

[9] 4 Wis. Adm. Code, sec. Ind. 51.16 (3) (b), October, 1967, Register No. 142.

[10] *Paluch v. Baldwin Plywood & Veneer Co.* (1957), 1 Wis. 2d 427, 85 N. W. 2d 373; *Wannmacher v. Baldauf Corp.* (1952), 262 Wis. 523, 55 N. W. 2d 895, 57 N. W. 2d 745; *Presser v. Siesel Construction Co.* (1963), 19 Wis. 2d 54, 119 N. W. 2d 405.

[11] (1952), 260 Wis. 433, 438, 439, 51 N. W. 2d 42.

to make a place . . . safe fails to do it and that accident occurs which performance of the duty was designed to prevent, then the law presumes that the damage resulted from—was caused by—the failure. The presumption may be rebutted, but if not rebutted by evidence, the plaintiff has met his burden of proof. 'If the very injury has happened which was intended to be prevented by the statute law, that injury must be considered as directly caused by the nonobservance of the law.' 38 Am. Jur., Negligence, p. 838, sec. 166."

A handrail has many purposes; children slide down them and adults use them to steady their step and guide them in their ascent and descent.[12] However, one of the obvious purposes of a railing is to arrest a trip or fall by providing a secure brace which the falling person can grasp and prevent a serious tumble.

Given the testimony that Raymond Cossette had tripped and fallen, the jury could reasonably infer that the presence of a suitable railing would have prevented the accident and that the absence of the railing was a substantial factor in causing the accident. Furthermore, because the accident here (the fall) was one that the safety order was designed to prevent, the causal connection between the two can be presumed.[13]

*By the Court.*—Judgment affirmed.

HALLOWS, C. J. (*dissenting*). Reluctantly I must conclude the facts do not come under Rule 512 (b) of the Model Code of Evidence. This statement of the rule adopted in *Rudzinski v. Warner Theatres* (1962), 16 Wis. 2d 241, 114 N. W. 2d 466, is declaratory of the case law in Wisconsin. The rule requires the declarant

---

[12] *See Parchem v. St. Cecilia's Congregation* (1965), 28 Wis. 2d 227, 137 N. W. 2d 90, where a woman desired to use a handrail for support in descending a stairway.

[13] *L. M. Bickett Co. v. Industrial Comm.* (1960), 10 Wis. 2d 289, 102 N. W. 2d 748; *Van Pool v. Industrial Comm.* (1954), 267 Wis. 292, 64 N. W. 2d 813.

to be "under the stress of a nervous excitement caused by his perception of the event or condition which the statement narrates or describes or explains." Although I give the term "nervous excitement" the broad meaning found in our prior cases of a "stimulus produced by the event and which is still operating," and "perception" the meaning of participation, I do not find the requisite conditions are met to admit the deceased's statement as an exception to the hearsay rule and forego the safeguards of cross-examination.

*Res gestae* in Wisconsin is somewhat of a catch-all phrase. Basically it means when an utterance is spontaneous, unreflected, and made contemporaneously with the force of the act or event which produced it, the utterance is admissible. However, the unreflecting spontaneity of a contemporaneous statement does not necessarily insure against faulty perception or inaccurate use of language to describe the event. But this risk of inaccuracy is taken when the exception is recognized. In any event, a spontaneous remark by its nature is unreflective and is made in response to some event sufficiently jarring to the declarant to elicit or provoke a natural, unthinking, undeliberative remark. These conditions are considered psychologically sufficient to insure truth or the conformity of speech to the mental or perceptive state because no opportunity is given the mind to direct the contents of the utterance. Without these attributes, the remark lacks the basis of the reason for the exception to the hearsay rule and the trustworthiness of the statement must then be subject to oath and cross-examination. *Pocquette v. Carpiaux* (1952), 261 Wis. 340, 52 N. W. 2d 787; *Andrews v. United States Casualty Co.* (1913), 154 Wis. 82, 142 N. W. 487; *Cohodes v. Menominee & Marinette Light & Traction Co.* (1912), 149 Wis. 308, 135 N. W. 879.

When the jarring effect or shock of the event is so great to the declarant that it can be said his statement

although made after the event still proceeds as a natural impulse or as a natural unreflected reaction thereto, its spontaneity may be substituted for the contemporaneous time requirement of the exception. *Krasno v. Brace* (1951), 259 Wis. 12, 47 N. W. 2d 314; *Kressin v. Chicago & N. W. Ry.* (1928), 194 Wis. 480, 215 N. W. 908. *See also Johnson v. State* (1906), 129 Wis. 146, 108 N. W. 55; *Andrzejewski v. Northwestern Fuel Co.* (1914), 158 Wis. 170, 148 N. W. 37; *Shiefel v. State* (1923), 180 Wis. 186, 192 N. W. 386.

An utterance made after there has been an opportunity to reflect is inadmissible. The lapse of time within which reflection might take place is proportionate to the degree of intensity of the stimulating event and varies in each case. *Andrzejewski v. Northwestern Fuel Co., supra.*

There is no evidence of when Cossette allegedly fell and his utterance was not contemporaneous with the event and was not spontaneous. The majority of the court reasons the serious injury to Cossette gives rise to a reasonable inference of stress or shock which was still effective when he made this statement. But his utterance was not responsive to the event. It was not impulsive, instinctive, or spontaneous but was made in response to a question. While an answer to a question may be spontaneous within the meaning of the exception, I think it is a factor to be considered. Even though the alleged fall would have been startling and the injury effective as a stimulus, we have no direct evidence of the time lapse or of Cossette's mental condition to indicate he had not or could not reflect upon his condition.

In *Hupfer v. National Distilling Co.* (1903), 119 Wis. 417, 96 N. W. 809, we stated utterances must not be in the nature of a narration of the facts after the event has fully transpired, or the fruit of memory, or the result of the possibility of fabrication after opportunity to deliberate. *See also Voigt v. Voigt* (1964), 22 Wis. 2d 573, 126 N. W.

2d 543. From the record, we can only speculate that Cossette was in such pain or shock that he could not deliberate or think. I must reluctantly take the position the statement of Cossette was inadmissible as a narration after the event and was not proved to be spontaneous, unreflective, or the result of stress or force of the alleged event to which it related.